Community Central Energy Corporation, Petitioner *v.* Pennsylvania Public Utility Commission, Respondent.

Argued February 6, 1980, before President Judge BOWMAN and Judges CRUMLISH, JR., WILKINSON, JR., MENCER, BLATT, CRAIG and MACPHAIL. Judges ROGERS and WILLIAMS, JR. did not participate.

*Paul A. Barrett,* with him *John H. Appleton, Nogi, O'Malley & Harris,* for petitioner.

*Gary D. Cohen,* Assistant Counsel, with him *Joseph J. Malatesta, Jr.,* Deputy Chief Counsel and *George M. Kashi,* Chief Counsel, for respondent.

OPINION BY JUDGE MENCER, May 6, 1980:

This appeal presents a very limited, but important, issue for our resolution. We must decide whether Section 307(e) of the Public Utility Law[1] afforded the Public Utility Commission (Commission) the discretion, upon a showing of good reason, not to order full refunds of overcollections of automatic adjustment clause revenues.[2]

---

[1] Act of May 28, 1937, P.L. 1053, *as amended,* repealed by the Act of July 1, 1978, P.L. 598. A similar provision is now found in the Public Utility Code, 66 Pa. C.S. §1307(e).

[2] The factual background of this appeal can be briefly stated. Community Central Energy Corporation (Community) is one of seven steam heating public utilities which have automatic fuel cost adjustment clauses in their tariffs. In the instant case, Community timely filed its automatic cost adjustment statement for the fiscal year ending June 30, 1978. A hearing was held on the matter, and an administrative law judge concluded that Community's contention that the Commission has discretion, upon a showing of good reason, not to order full refunds of overcollections of automatic adjustment

Section 207(e) reads as follows:

(e) Within thirty days following the end of such twelve month period as the commission shall designate, each public utility using an automatic adjustment clause shall file with the commission a statement which shall specify for such period (1) the total revenues received pursuant to the automatic adjustment clause, (2) the total amount of that expense or class of expenses incurred which is the basis of the automatic adjustment clause, and (3) the difference between the amounts specified by (1) and (2). Such report shall be a matter of public record and copies thereof shall be made available to any person upon request to the commission. Within sixty days following the submission of such report by a public utility, the commission shall hold a public hearing on the substance of the report and any matters pertaining to the use by such public utility of such automatic adjustment clause in the preceding period and may include the present and subsequent periods. *Absent good reason being shown to the contrary,* the commission shall, within sixty days following such hearing by order direct each such public utility to, over an appropriate twelve-month period, refund to its patrons an amount equal to that by which its revenues received pursuant to such automatice adjustment clause exceeded the amount of such expense or class of expenses, or recover from its patrons an amount equal to that by which such expense or class of expenses exceeded the revenues received pursuant to

clause, revenues was incorrect. Community filed exceptions to the decision of the administrative law judge, and the Commission, on January 25, 1979, adopted said decision and entered its order from which this appeal was filed.

such automatic adjustment clause. For the purpose of this subsection, where a twelve month report period and twelve month refund or recovery period shall have been previously established or designated, nothing herein shall impair the continued use of such previously established or designated periods; nor shall anything herein prevent the commission from amending at any time any method used by any utility in automatically adjusting its rates, so as to provide the commission more adequate supervision of the administration by a utility of such method and to decrease the likelihood of collection by a utility, in subsequent periods, of amounts greater or less than that to which it is entitled, or, in the event that such deficiency or surplus in collected amounts is found, more prompt readjustment thereof. (Emphasis added.)

The key words for our consideration are eight words of Section 307(e). Do the words "Absent good reason being shown to the contrary" merely provide a basis for the Commission to have more than 60 days to issue its refund order, or do they provide the Commission with the discretion not to order full refunds of overcollections of automatic adjustment clause revenues?

Our reading of the statutory sentence in question leads us to conclude that Section 307(e) did provide the Commission with discretion as to the extent of refunds to be made to public utility patrons. The words "Absent good reason being shown to the contrary" were used to modify that portion of the sentence which immediately followed, i.e., "the commission shall . . . by order direct each such public utility to . . . refund to its patrons an amount. . . ." This being so, we cannot allow ourselves to be concerned with contentions that the legislature intended something different. The

Statutory Construction Act of 1972 instructs us that "[w]hen the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit."[3]

We note that Section 307(e) provided that, in proper cases, the Commission should order any public utility to recover from its patrons an amount equal to *undercollections* of automatic adjustment clause revenues. In addition, the Commission was given the supervision of the administration by a utility of the method used by any utility in automatically adjusting its rates so as to decrease the likelihood of collection by a utility of amounts greater or less than that to which it was entitled. We consider these provisions of Section 307(e) to evidence the clear intent of the legislature to provide the Commission with supervisory control and discretion in the area of refunds to, or recoveries from, patrons relative to the collection of automatic adjustment clause revenues.

Accordingly, we will reverse the Commission's order of January 25, 1979, pertaining to Community, and remand the matter to the Commission for further proceedings and consideration not inconsistent with this opinion.[4]

### ORDER

AND Now, this 6th day of May, 1980, the order of the Pennsylvania Public Utility Commission, dated January 25, 1979, pertaining to Community Central Energy Corporation, M-FAC50005, is hereby reversed and the matter is remanded to the Commission for further proceedings and consideration not inconsistent with the above opinion.

---

[3] 1 Pa. C.S. §1921(b).

[4] We express no view by our remand concerning whether or not Community should be ordered by the Commission to refund the total overcollection of revenues for the fiscal year ending June 30, 1978.

President Judge Bowman did not participate in the decision in this case.