422 A.2d 141

**CANONSBURG GENERAL HOSPITAL,**

v.

**DEPARTMENT OF HEALTH of the Commonwealth of Pennsylvania and H. Arnold Muller, M.D., Secretary of Health, Appellants.**

Supreme Court of Pennsylvania.

Argued Sept. 24, 1980.

Decided Oct. 31, 1980.

D. Galton Cabot Moss, Asst. Atty. Gen., Pa. Dept. of Health, Reed Hamilton, Harrisburg, for appellants.

Clara Mattern, Horty, Springer & Mattern, Pittsburgh, for appellee.

Before O'BRIEN, C. J., and ROBERTS, NIX, LARSEN, FLAHERTY and KAUFMANN, JJ.

## OPINION OF THE COURT

ROBERTS, Justice.

This is an appeal from an order of the Commonwealth Court granting appellee Canonsburg General Hospital a writ of peremptory mandamus directing appellants, the Commonwealth's Department of Health and its Secretary, to certify that Canonsburg General's proposal to build a new hospital conforms to standards for federal financial assistance under section 1122 of the Social Security Act, 42 U.S.C. § 1320a–1. We agree with appellants that Canonsburg General has failed to exhaust available administrative remedies and that judicial relief is thus not proper. Hence we reverse the order of the Commonwealth Court, 51 Pa.Cmwlth. 142, 413 A.2d 1185, and dismiss the petition.

Canonsburg General plans to replace its existing 108 bed facility with a new 100 bed facility at a cost of approximately $17 million. Instead of pursuing only private financing, Canonsburg General seeks to obtain federal financial assistance. Accordingly, Canonsburg General submitted an application for approval of its planned construction to Health Systems Agency of Southwestern Pennsylvania (HSA), the regional body to which appellants have assigned their responsibility to review applications for approval.[1]

HSA received Canonsburg General's application on April 16, 1979. On April 30, HSA advised Canonsburg General that the application was incomplete. According to HSA, the

---

1. By contract with the United States Department of Health, Education and Welfare (now Health and Human Services), Pennsylvania's Department of Health reviews proposed capital expenditure projects (such as Canonsburg General's) to determine conformity with federal standards for financial assistance. The Department of Health, in turn, gives HSA initial responsibility to pass upon proposals. It is agreed that the actions of HSA are, for purposes of this case, the actions of the Department of Health.

For a discussion of section 1122 of the Social Security Act, see *Wilmington United Neighborhoods v. HEW*, 615 F.2d 112 (3d Cir. 1980).

application failed to supply necessary information regarding either joint planning with other health care facilities or the feasibility of alternatives to the $17 million proposed project. Because it deemed the application incomplete, HSA did not consider the merits of Canonsburg General's proposal.

Canonsburg General did not challenge HSA's determination of incompleteness. Instead it purported to attempt to cure the shortcomings in its application. On May 30, HSA received additional information from Canonsburg General. One week later, on June 6, HSA informed Canonsburg General that this additional information did not constitute a response to HSA's request. Again Canonsburg General sought no review of HSA's determination.

On July 13 Canonsburg General provided HSA with still more information. This, too, in the view of HSA did not serve to complete Canonsburg General's application. HSA so advised Canonsburg General on July 27. Again no review was sought. More correspondence followed, including an August 1 letter from Canonsburg General to HSA reporting that it had previously explored alternatives with a neighboring facility, and an August 10 response of HSA continuing to treat the information as inadequate. As with all previous determinations of HSA, this last determination was not challenged.

Negotiations between Canonsburg General and HSA ensued. In mid–August, Canonsburg General agreed to analysis of its proposal by Kidder, Peabody & Company, a Wall Street rating firm. By letter dated August 30, HSA expressed satisfaction with Canonsburg General's willingness to submit its proposal to analysis by Kidder Peabody. This letter went on to state HSA's understanding that, should the Kidder Peabody analysis not be completed before October 1, Canonsburg General's proposal would remain incomplete and would not be considered on the merits.

On September 5, Canonsburg General responded that it believed completion of the Kidder Peabody analysis was not a prerequisite to review of its application on the merits. Within a month, however, Canonsburg General took a new

position. By letter of counsel, dated October 5, Canonsburg General informed appellant, the Secretary of the Department of Health, that despite HSA's determinations to the contrary Canonsburg General's proposal should be considered complete as of its May 30 response to HSA's initial, April 30 determination of incompleteness. Relying upon federal regulations 42 C.F.R. §§ 100.106(a)(3) and 100.-106(a)(4), Canonsburg General took the position that, notwithstanding its failure to challenge HSA's determinations of incompleteness, the application is automatically approved as of August 1979 for want of a decision on the part of HSA.[2]

Appellant Secretary rejected Canonsburg General's new position. In a letter dated November 15, the Secretary stood behind HSA's continuing determinations that Canonsburg General's application was incomplete. The letter adds:

"[I]t is apparent that the hospital accepted this procedure as several letters and additional information were exchanged following the letter of May 22, 1979. I have been advised that the joint planning efforts and the investigation of alternatives has been proceeding. I am certain that as soon as these are resolved satisfactorily, the HSA will have sufficient information to complete the application and begin the review."

Canonsburg General neither awaited completion of the Kidder Peabody analysis nor pursued formal administrative review of the Secretary's decision not to disturb HSA's previous determinations of incompleteness. Instead, Canonsburg General filed the present petition for review in the

---

2. Under Section 100.106(a)(4), within ninety days of receipt of a completed proposal, the Department (through HSA) must render a decision on the merits. "The failure of the agency to provide any such notification within the time limitations . . . shall have the effect of a determination described in paragraph (a)(4)(i) of this section [(approval of proposed capital expenditure)]." Section 100.106(a)(3) provides that where a proposal initially is deemed incomplete, the ninety-day period of section 100.106(a)(4) "shall run from the date of receipt by the agency of a notice containing [the additional information required]." It is Canonsburg General's contention that such additional information was provided as of May 30, and therefore the application must be treated as approved as of August 1979.

nature of peremptory mandamus within the Commonwealth Court's original jurisdiction. In its petition, filed November 19, 1979, Canonsburg General sought immediate judicial review of HSA's determinations that Canonsburg General had not properly completed its application for approval. Canonsburg General reiterated the position taken in its October 5 letter to the Secretary that its May response to HSA "provided the HSA with the requested information, answering every question raised in the HSA's letter of April 30, 1979 in a complete manner." According to Canonsburg General, 42 C.F.R. § 100.106(a)(3) and 100.106(a)(4) establish that, as of late August (when Kidder Peabody was to begin its analysis) Canonsburg General had a clear legal right to certification that its project conformed to federal standards for financial assistance.

Appellants filed preliminary objections, including an averment that Canonsburg General had failed to state a claim upon which a writ of mandamus can be issued. Judge Craig of the Commonwealth Court dismissed the objections and, on the basis of the existing record, granted Canonsburg General the requested relief. According to Judge Craig, Canonsburg General's application was complete as of its second response dated July 13, and thus under 42 C.F.R. §§ 100.106(a)(3) and 100.106(a)(4), HSA's failure to act on a complete application worked an automatic approval. On appellants' exceptions, the Commonwealth Court en banc upheld entry of the writ of mandamus. This appeal followed.

█ Well–settled case law of this Court precludes a party challenging administrative decision making from obtaining judicial review, by mandamus or otherwise, without first exhausting administrative remedies. Very recently, in *Delaware Valley Convalescent Center, Inc. v. Beal*, 488 Pa. 292, 412 A.2d 514 (1980), this Court unanimously upheld the Commonwealth Court's dismissal of a petition for review of a previously unchallenged reimbursement ceiling of the Department of Public Welfare. Judicial review without either a proper record or an administrative adjudication would constitute " '[p]remature interruption of the administrative

process.' " 488 Pa. at 296, 412 A.2d at 516, quoting B. Schwartz, Administrative Law § 172 at p. 498 (1976).

Moreover, mandamus is not a common mode of review. Rather, as our many cases make clear,

> "mandamus is an extraordinary writ which lies to compel the performance of a ministerial act or mandatory duty where there is a clear legal right in the plaintiff, a corresponding duty in the defendant, and a want of any other appropriate and adequate remedy."

*Valley Forge Racing Ass'n, Inc. v. State Horse Racing Comm'n*, 449 Pa. 292, 295, 297 A.2d 823, 824–25 (1972). Accord, e.g., *Rylke v. Portage Area School District*, 473 Pa. 481, 375 A.2d 692 (1977); *Princeton Sportswear Corp. v. Redevelopment Authority*, 460 Pa. 274, 333 A.2d 473 (1975); *Unger v. Hampton Township*, 437 Pa. 399, 263 A.2d 385 (1970). Thus in *Valley Forge*, this Court unanimously upheld the Commonwealth Court's dismissal of an action in mandamus where the plaintiff, disappointed with the Racing Commission's order renewing a license, failed to pursue an available appeal under the Horse Racing Act. "This is the very type of appropriate and adequate remedy that courts have traditionally viewed as defeating a cause of action in mandamus." 449 Pa. at 297, 297 A.2d at 825.

■ Available to Canonsburg General here is the same remedy of review available to the unsuccessful plaintiffs in *Delaware Valley* and *Valley Forge*. At all times throughout this controversy appellants have been willing and able to entertain a complaint under 1 Pa. Code § 35.1 et seq. challenging HSA's determinations of incompleteness. Such a complaint mechanism would permit Canonsburg General to obtain administrative review of HSA's adverse rulings from the perspective of a complete record. There is every reason to believe that this mechanism will permit full and fair review. As has been observed, "courts should not presume futility in the administrative appeal; on the contrary, they should assume that the administrative process will, if given a chance, discover and correct its own errors."

Schwartz, supra, at p. 499. From an adverse administrative adjudication, Canonsburg General is guaranteed a direct appeal. See 2 Pa. C.S. § 702.

■ Canonsburg General and the Commonwealth Court have disputed the availability of the complaint mechanism of 1 Pa. Code § 35.1 et seq. to challenge determinations of incompleteness. We see no reason to question appellants' willingness to make the complaint mechanism available. As the Supreme Court of the United States observed in *Vermont Yankee Nuclear Power Corp. v. Natural Resources Defense Council,*

> "[A reviewing court should not] stray beyond the judicial province to explore the procedural format or to impose upon the agency its own notion of which procedures are 'best' or most likely to further some vague, undefined public good."

435 U.S. 519, 549, 98 S.Ct. 1197, 1214, 55 L.Ed.2d 460 (1978) (footnote omitted). In any event, under 42 C.F.R. § 100.-106(c) it would appear that appellants' willingness to make the complaint mechanism available to challenge determinations of incompleteness is well–founded. Section 100.106(c) provides in part that the agency "will grant to a person proposing a capital expenditure an opportunity for a fair hearing with respect to the findings and recommendations of the ... agency, and will establish and maintain procedures for such appeal." [3]

■ Thus we are satisfied that Canonsburg General's failure to pursue available administrative remedies forecloses judicial review. The order of the Commonwealth Court,

---

**3.** We note that section 100.106(c) provides that a party seeking review must request a hearing in writing "within 30 days after the date on which the person proposing the capital expenditure receives notice of an adverse finding or recommendation ...." 42 C.F.R. § 100.106(c)(1). Assuming that Canonsburg General pursues its administrative remedies, it remains for appellants to determine, in the first instance, if this section has any effect on Canonsburg General's challenge to HSA's determinations of incompleteness.

based on a contrary conclusion, must be reversed and Canonsburg General's petition for review must be dismissed.

Order reversed and petition dismissed.