602 A.2d 1300

**Sandra L. HAINSEY and Samuel B. Hainsey t/a Double S. Bar, Appellants,**

v.

**COMMONWEALTH of Pennsylvania PENNSYLVANIA LIQUOR CONTROL BOARD, Appellee.**

Supreme Court of Pennsylvania.

Argued March 9, 1990.

Decided Feb. 10, 1992.

J. Randall Miller, Altoona, for appellants.

Leonard R. Omolecki, Jr., Asst. Counsel, Pennsylvania Liquor Control Bd., Harrisburg, for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA, PAPADAKOS and CAPPY, JJ.

## OPINION

ZAPPALA, Justice.

This is an appeal, by allowance, from an *en banc* memorandum opinion and order of the Commonwealth Court which vacated an order of the Court of Common Pleas of Blair County in a case involving a citation issued to certain liquor licensees by the Pennsylvania Liquor Control Board (Board). —— Pa.Cmwlth. ——, 550 A.2d 1056. The factual background is as follows.

On August 6, 1986, the Board cited Sandra L. and Samuel B. Hainsey (licensees), the appellants herein, for possessing and operating gambling devices and for permitting gambling or lotteries on the premises of their tavern, the Double S. Bar in Altoona, Pennsylvania. On October 16, 1986, a hearing examiner conducted a hearing on these charges.[1] The Board offered the testimony of two witnesses, these being a Pennsylvania State Police Trooper and a Board Enforcement Officer. These witnesses had played only a supervisory role in investigating operations at the Double S. Bar, and were unable to provide testimony sufficient to prove the Board's case, inasmuch as they lacked adequate firsthand knowledge of the facts.

Absent from the hearing were the police officers who executed a search warrant at the Double S. Bar. There was no testimony, therefore, regarding what, if any, gambling devices were found on the premises.

Also absent from the hearing was a police informant who had participated in transactions that were the basis for many of the charges against the licensees. Conversations between the informant and persons at the Double S. Bar had been recorded, but counsel for the Board claimed that under applicable wiretapping laws the tapes and transcripts of such conversations could not be introduced in Board proceedings until such time as they became a matter of public record through introduction in criminal proceedings against the licensees. Criminal proceedings had been commenced in May, 1986, when the licensees were charged with violations of the gambling laws. Realizing that these criminal charges would not be disposed of before the present hearing, counsel for the licensees had, prior to the date of the hearing, requested that the proceeding be postponed in order to save his clients the expense and inconvenience of

1. This case arose prior to the effective date of the June 29, 1987 amendment to Section 471 of the Liquor Code, 47 P.S. § 4-471, providing for hearings to be conducted by administrative law judges, and allowing appeals to be taken to the Board from adjudications rendered by the administrative law judges.

appearing at a time when the Board would be unable to proceed with its case. This request was, however, denied.

At the hearing, the Board called upon Pennsylvania State Trooper Bowser to testify regarding the facts upon which the citation was issued. After initially indicating that he used a wired confidential informant on the scene and that the recordings of conversations between the Appellants and the Informant could not be disclosed until disposition of the criminal matter, the examination of Trooper Bowser continued as follows:

**BY TROOPER BOWSER:**

A. Yes sir, the tapes were transcribed.

**BY MR. CRISTE:**

Q. You have those with you?

A. Yes sir, but I can't use them for this proceeding.

Q. You cannot use them for this proceeding?

A. No sir.

Q. So in each instance that's charged in this citation was it by virtue of wiretapping?

A. Every instance that Mr. Hainsey was charged with was either a concentral telephone wiretap or a body wire was used.

**BY THE EXAMINER:**

Q. Are you saying that there was not a time when you went on the premises or any other member of the law enforcement service and actually ceased (sic) materials which would constitute gambling devices?

A. There was a search warrant served on Superbowl Sunday as a result of this.

Q. Were you the person who was involved on the premises at that time?

A. No sir. I did not personally execute the search warrant.

Q. So there's no one here in this hearing room today who physically could, who could testify that they physically observed gambling materials on the premises?

A. That's correct.

Q. Is there a Pennsylvania State Police Trooper who had knowledge of that information?

A. There was a, several Pennsylvania State Police Officers ...

Q. But they're not here to testify?

A. They're not here to testify.

Q. You do not have the records with you, the business records of your office to show what materials allegedly were ceased (sic) on that date?

A. I have copies of the search warrants. I have ...

Q. That's up to Mr. Criste then if he wants to proceed on that basis and I'll hear from Mr. Miller if he intends to proceed relative to that.

**OFF THE RECORD**

**THE EXAMINER:** You may proceed with whatever testimony you're going to offer Mr. Criste.

**BY MR. CRISTE:**

Q. Officer, do you have in your possession here today any gambling paraphernalia that was ceased (sic) on the premises on the Licensee in this case?

A. No sir.

Q. Is your testimony going to relate to only the hearsay testimony?

A. The only thing that I could testify to would be the dates that I was present, personally wired the informant, and observed the informant enter the Double S. Bar. What was said on the tapes and what was recorded I don't believe under the law I could testify to until the case, until it becomes a matter of public record.

**THE EXAMINER:** Then this proceeding should not be held, it should have been differed (sic) until such time as the criminal proceeding was disposed of. Why is this hearing before us, Mr. Criste, do you know?

**MR. CRISTE:** That is the question, Mr. Examiner, I thought it should be brought to the attention of the Enforcement Branch of the Liquor Control Board and the

Legal Department, that we are really unable to establish this case here today.

THE EXAMINER: Do you have any more questions for Officer Bowser at this point, Mr. Criste? Do you have any further questions for him?

MR. CRISTE: Well, give me a moment.

THE EXAMINER: Certainly.

MR. CRISTE: I have nothing further to ask the Officer.

THE EXAMINER: Mr. Miller, do you have any questions for this witness?

MR. MILLER: I have no questions.

\* \* \* \* \* \*

Q. Now Officer, were you familiar with the voice of Mr. Hainsey?

A. No sir. I observed the informant dial a telephone number. The telephone number was 943-5826. I personally ...

Q. He called that number?

A. Yes sir, I observed him dial that number.

Q. You observed, your informant dialed that number?

A. That's correct. I overheard his portion of the conversation, okay. I checked with Bell Telephone and the 943-5826 is subscribed to Sandra L. McNally. The address is 1316 Third Avenue.

Q. Who was the informant talking with on the telephone? You said you only heard your informant's part of the conversation.

A. The informant related to me that he had conversation with Samuel Hainsey.

THE EXAMINER: Mr. Criste, that's obviously hearsay ...

\* \* \* \* \* \*

BY MR. CRISTE:

Q. Officer, in support of establishing the averments in this citation why isn't the informant here to state that he personally made these calls?

A. He never was subpoenaed.

Q. He was never subpoenaed.

THE EXAMINER: So in the preparation of the case by the Board, the LCB, the person who is, the identity you provided the Board was not subpoenaed to date to be here today?

\* \* \* \* \* \*

THE EXAMINER: Well, let's save some time. Officer, you testified about the 10th, are there any of the dates from the 10th on that are alleged in these violations where you personally listened to and are able to identify the voice of Samuel Hainsey and are able to say that there was conversation with respect to gambling activities on the premises of the Licensee? Not at his home or anyplace else.

A. I personally never talked to Mr. Hainsey. The tapes that were made ...

THE EXAMINER: Which are inadmissible here today?

A. I can't.

THE EXAMINER: So you're not able to testify under oath here today, with any degree of certainty, based upon tapes to back you up, or transcripts you made of the tapes, that Mr. Hainsey engaged in gambling activities because the relevant information is not admissible in this proceeding?

A. That's correct.

R. 5a–16a.

At this point, counsel for the Board stated that he was unable to establish his case at that time, and agreed with the hearing examiner that the proceeding should have been deferred until such time as the criminal proceedings had been concluded. He also made a motion that the examiner continue the case until the criminal charges were disposed of. The licensees objected to the motion on grounds that they were ready to proceed, that there would be inconvenience accruing from such a continuance, and, further, that they had previously requested a postponement to avoid this exact problem. The examiner agreed with the licensees

that a continuance would not be proper, but telephoned the office of the Board's Chief Counsel and was advised by a member of the legal staff to grant the continuance. Prior to calling the Chief Counsel's office, the hearing officer made the following observation with regard to the authority of the Board's attorney to grant his own motion for a continuance:

THE EXAMINER: Mr. Miller I'll hear from you but I want to tell you before I hear from you. That in it's wisdom the Liquor Control Board has indicated that Hearing Officers do not have the power to grant or deny motions for continuance. For some peculiar reason the Liquor Control Board has determined that the prosecuting attorney or persecuting attorney is part of the belief of some Licensees. Mr. Criste has the power to grant his own motion. He says to the left I hereby request a motion to continue, then he answers himself and says, "Certainly I'll grant the motion that I asked myself to continue." That's the procedure we have here in the Liquor Control Board. I can, however ...

MR. MILLER: In light of that I certainly object to Mr. Criste's proceeding.

THE EXAMINER: I understand that. I can, however, call Harrisburg and advise them that Mr. Criste has asked himself to grant himself a motion to continue and has granted himself, I assume you granted yourself that motion, didn't you, Mr. Criste?

MR. CRISTE: Yes Your Honor.

R. 17a–18a.

The reason for making this telephone inquiry was that under Section 15.3(f) of the Board's Special Rules of Practice and Procedure, 40 Pa.Code § 15.3(f), continuances can be granted only after consultation with the Board's Legal Bureau. Section 15.3(f) provides:

(f) An examiner may grant a motion for continuance only for hearings confined to motions made at the time and place set for hearing, which are verbally approved by the Legal Bureau of the Board. The motions shall be based

upon the alleged inability of a material party, witness or counsel to appear for reasons of illness or other cause, which inability has come to the attention of the moving party within the 24–hour period immediately preceding the time set for hearing. All other motions for continuance shall be referred to the Board for determination. Motions of the former type shall include all of the following:

(1) The name and address of the unavailable material party, witness or counsel.

(2) A brief statement of the service or testimony to be offered by such party, witness or counsel.

(3) The reason for the inability to be present.

(4) In the case of illness, a medical certificate, if possible, attesting to the illness and inability to appear.

(5) The willingness of the moving party to bear the expense of increased witness fees and mileage occasioned by the request.

Asserting that the prerequisites set forth in this rule had not been satisfied, to wit, that the motion for a continuance had not been timely made, and that the enumerated requirements set forth in subparagraphs one through five of the rule had not been satisfied, the licensees filed in the Court of Common Pleas of Blair County a petition entitled, "Petition for Rule to Show Cause Why Citation Should Not Be Dismissed." Ostensibly on the basis that the order granting the continuance had not finally disposed of the litigation and thus was not a final order subject to appeal, the court regarded the petition as being governed by 42 Pa.C.S. § 708(b), which addresses disposition of "improvidently taken administrative appeals and other matters." In 42 Pa. C.S. § 708(b), it is provided:

(b) Appeals.—If an appeal is improvidently taken to a court under any provision of law from the determination of a government unit where the proper mode of relief is an action in the nature of equity, mandamus, prohibition, quo warranto or otherwise, this alone shall not be a ground for dismissal, but the papers whereon the appeal

was taken shall be regarded and acted on as a complaint or other proper process commenced against the government unit or the persons for the time being conducting its affairs and as if filed at the time the appeal was taken.

Accordingly, the court held that the petition should be treated as one seeking both a writ of prohibition forbidding the examiner from admitting further evidence against the licensees and a writ of mandamus compelling the examiner to proceed to a final ruling on the basis of the record then in existence.

A motion to quash the petition was filed by the Board alleging that the licensees had not exhausted their administrative remedies and that the Court of Common Pleas lacked subject-matter jurisdiction. Stating that there existed no adequate administrative remedy to redress what it perceived as an abuse of discretion by the hearing examiner in granting the continuance, and concluding that it held supervisory jurisdiction over proceedings before the Board, the court issued the aforesaid writs of mandamus and prohibition.

An appeal was taken to the Commonwealth Court, whereupon the petition was again viewed as an improvidently taken administrative appeal under 42 Pa.C.S. § 708(b), supra. The court held, however, that the petition should have been dismissed for lack of subject-matter jurisdiction. In so holding, the court reasoned that the order granting the continuance was interlocutory and therefore not appealable, and that courts of common pleas have jurisdiction over cases arising from proceedings before the Board only in cases where there has been a final order issued by the Board. Accordingly, the Commonwealth Court vacated the writs of mandamus and prohibition, and remanded the case to the Board, noting that the issue of continuance arising before the hearing examiner at the Board's hearing should not have been addressed by the court below where the issue had not been formally presented to or acted upon by the Board itself. The present appeal ensued.

■ It is a well-settled principle of administrative law that the power to grant or refuse continuances is an inherent power of an administrative agency which is subject to review only upon a showing of an abuse of discretion. *O'Hara v. Comm. Pa. Bd. of Prob. and Parole*, 87 Pa. Cmwlth. 356, 487 A.2d 90 (1985). This Court has defined an abuse of discretion as follows:

> "not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied or *the judgment exercised is manifestly unreasonable*, or the result of partiality, prejudice, bias, or ill-will, as shown by the evidence or the record, discretion is abused."

*Kelly v. County of Allegheny*, 519 Pa. 213, 546 A.2d 608 (1988) citing *In re Woman's Homoeopathic Hospital of Philadelphia*, 393 Pa. 313, 316, 142 A.2d 292, 294 (1958) (emphasis added).

As an example of an abuse of discretion, we have held that one judge cannot override another judge of the same court in the same case. In *Commonwealth v. Brown*, 485 Pa. 368, 402 A.2d 1007 (1979), we adopted the reasoning of the Superior Court in *Commonwealth v. Griffin*, 257 Pa.Super. 153, 390 A.2d 758 (1978), with regard to one judge overruling an interlocutory order of another judge of the same court in the same case. In *Griffin*, the Superior Court held that it was improper for one judge to overrule another judge based upon the same record facts in that such action constituted an abuse of discretion. The underlying reason for such a determination was the fact that there must be some degree of finality to pre-trial dispositions so that judicial economy and efficiency can be maintained.

■ Whether one characterizes the Board's action in denying the licensees' request for a continuance pending disposition of the underlying criminal proceedings and the granting itself a continuance for identical reasons as manifestly unreasonable or violative of the holding set forth in *Commonwealth v. Brown*, the result is the same. Clearly, the licensees had requested a continuance based upon the

pendency of the underlying criminal matter. Upon consideration of the licensees' request for a continuance, the Board denied the request. Thereafter counsel for the Board moved and granted his own motion for continuance.

Although, *Commonwealth v. Brown* is a criminal case addressing the authority of a common pleas judge overruling a different common pleas judge, the harm to be prevented is likewise present here. The licensees sought and were denied a continuance from the Board. Thereafter, the Board itself sought and was granted a continuance on identical grounds. In essence, the Board previously determined that the pendency of the underlying criminal matter was not sufficient justification for a continuance. That determination having been made, it was an inappropriate exercise of discretion to grant the Board's request for a continuance based on the same reasons previously tendered by the licensees.

 Having concluded that the Board acted improperly in considering and granting a continuance during the hearing, we must address the appropriate remedy. Under ordinary circumstances, we would remand the controversy to the hearing examiner for the purpose of making his recommendation to the Board in light of the record as it existed on the date of the hearing. However, the uniqueness of the procedure followed by the Board, prevents us from doing so. A remand in this matter would ultimately result in undercutting the very basis of our holding. If this matter were remanded to the hearing examiner for his recommendation and he recommended the dismissal of all charges against the licensees, but the Board refused to adopt his recommendation, then the Licensees would be required to file an appeal to the Court of Common Pleas. Such an appeal would be *de novo* in nature. The Board would be able to present the very evidence which we have excluded based upon the Board's action in granting its own continuance. Thus, we decline to allow the Board to do indirectly what it could not do directly, i.e. benefit from an improper continuance when a proper continuance was denied to the licensees.

■ Because of the dilemma that the Liquor Code and the Board has created, we must review the existing record to determine whether sufficient evidence was presented upon which the Board could properly make a determination. It is clear from this record that the Board presented no evidence upon which the Board could possibly conclude that the licensees did anything improper. Pennsylvania State Trooper Bowser testified that he relied upon an undisclosed informant's statements regarding alleged violations in concluding that the licensees were conducting a gambling operation. At no time did Trooper Bowser speak directly with or overhear any statements by the licensees. He merely observed his informant dial a telephone number which the trooper identified as being that of the licensees and overhearing his informant conversing on the telephone. Notwithstanding Trooper Bowser's obvious predicament in attempting to establish the violations, he did not think it necessary to subpoena the informant who allegedly had the damaging conversations with the licensee, Samuel Hainsey. In fact, the following excerpt of a colloquy between the hearing officer and Trooper Bowser is indicative of the whole state of the record.

> **THE EXAMINER:** So you're not able to testify under oath here today, with any degree of certainty, based upon tapes to back you up, or transcripts you made of the tapes, that Mr. Hainsey engaged in gambling activities because irrelevant information is not admissible in this proceeding?
>
> A. That's correct.

R. 16a.

Furthermore, Trooper Bowser testified that a search warrant was executed on the premises (which allegedly resulted in obtaining illegal gambling devices) but that the troopers who were involved with executing the search warrant were not present to testify as to what was seized in response to that search warrant.

■ Simply stated, all that the Board established at the hearing of October 16, 1986, was that the licensees owned a

liquor license and business commonly known as the Double S Bar. A remand for the Board's determination of the citation based upon such a record would be a waste of judicial economy. Therefore, based upon the record, we are compelled to conclude that the Board offered insufficient evidence to establish any violations by the licensees. Accordingly, the order of the Commonwealth Court is reversed and the citation directed to the licensees is dismissed.[2]

McDERMOTT, J., did not participate in the decision or consideration of this case.

FLAHERTY, J., files a dissenting opinion in which NIX, C.J., joins.

FLAHERTY, Justice, dissenting.

I dissent. An essential prerequisite to seeking judicial redress for the alleged procedural error of the hearing examiner has not been satisfied. It is axiomatic that, before redress may be sought in the courts for an error committed by an administrative agency, administrative remedies must first be exhausted. *Canonsburg General Hospital v. Department of Health*, 492 Pa. 68, 73, 422 A.2d 141, 144 (1980); *Packler v. State Employes' Retirement Board*, 487 Pa. 51, 408 A.2d 1091 (1979). Here, there has not even been a decision rendered by the administrative body. There has been no ruling by the Board, and the hearing examiner has only begun to receive evidence bearing upon the citation. No fines or license suspensions or revocations have been recommended or imposed. All that has occurred is a decision by a hearing examiner, in the normal course of receiving evidence, to grant a continuance. This decision is as much within the administrative realm as any ruling could possibly be, and is not one that should presently be the subject of judicial review.

2. Since the licensees have not challenged the procedure followed by the Board in granting its own continuances, we must refrain from addressing that issue. Our decision today is not intended, however, to reflect any opinion as to whether this procedure could be sustained if such a challenge were made.

By seeking immediate judicial review of the hearing examiner's ruling, the licensees sought to bypass the administrative process, in an effort to obtain dismissal of the charges against them. The policy of allowing administrative processes to function without premature judicial intervention, however, is well recognized. When the legislature has enacted a comprehensive regulatory scheme to address a particular subject and has established a governmental agency to administer that scheme, the courts are reluctant to interfere in matters which the legislature intended to be considered, at least initially, by the administrative agency.

Generally, only where there exists no adequate administrative remedy is the exhaustion of administrative recourse not required. *Feingold v. Bell of Pennsylvania*, 477 Pa. 1, 7, 383 A.2d 791, 793 (1977); *Ohio Casualty Group v. Argonaut Insurance Co.*, 514 Pa. 430, 525 A.2d 1195 (1987). Certainly, where there has been no decision by the Board, and where the issue is merely whether a continuance should have been granted, it cannot be presumed that administrative procedures are inadequate. As noted in *Canonsburg General Hospital v. Department of Health*, 492 Pa. at 73–74, 422 A.2d at 144, judicial action in a matter that is a proper subject for administrative adjudication, where there has not yet been such an adjudication, would constitute a premature intervention into the administrative process.

The inconvenience that the licensees may incur by having to attend a continued hearing, regrettable as perhaps that inconvenience may be, does not warrant a conclusion that the administrative process has failed in a manner so fundamental as to warrant immediate judicial intervention. Further, we have emphasized that futility cannot be presumed in the administrative process, and that, to the contrary, courts should assume that the administrative process will, if given a chance, discover and correct its own errors. *Id.*, 492 Pa. at 74, 422 A.2d at 145. If the hearing examiner in the present case erred in granting a continuance, it must be presumed that the Board, upon completion of the hearings, if not sooner, will recognize and respond appropriately to

the error. If an error is found, the Board will then have to determine whether it was of sufficient substance as to warrant dismissal of the citation.

In the event that the licensees are found to have committed violations for which sanctions can be imposed, and if the Board imposes such sanctions, the licensees are not without remedy. The Court of Common Pleas has jurisdiction over appeals from final orders of the Board, and, if the licensees believe they have erroneously been found to have committed violations or that the penalties imposed are too severe, they are entitled to take an appeal. 42 Pa.C.S. § 933(a)(1)(v); 47 P.S. § 4–471. The proceeding before the Court of Common Pleas is *de novo* in nature, being therefore unhampered by any procedural irregularities that may have occurred at the administrative level. See *Adair v. Pennsylvania Liquor Control Board,* 519 Pa. 103, 546 A.2d 19 (1988) (under 47 P.S. § 4–471, judicial review of Board-imposed sanctions is *de novo* in form, with the court being entirely free to reject the findings, conclusions, and sanctions of the Board).

It should be recognized, too, that allowing judicial intervention in a case like the present one would permit widespread disruption of administrative processes by facilitating premature attempts to invoke judicial responses to all manner of minor rulings made during routine administrative proceedings. Petitions alleging a boundless variety of asserted errors in such proceedings could potentially be filed. Such a result would substantially undermine the longstanding policy of judicial deference to administrative processes, and would be contrary to the legislative intent that these matters be resolved initially at the administrative level. Accordingly, the Commonwealth Court's remand of this matter to the Board should be affirmed.

NIX, C.J., joins this dissenting opinion.