**[J-95-2016]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**EASTERN DISTRICT**

**SAYLOR, C.J., BAER, TODD, DONOHUE, DOUGHERTY, WECHT, MUNDY, JJ.**

| | | |
|---|---|---|
| CITY OF PHILADELPHIA, | : | No. 26 EAP 2015 |
| | : | |
| Appellee | : | Appeal from the Order of |
| | : | Commonwealth Court entered on |
| | : | 12/11/2014 at No. 1347 C.D. 2013, |
| v. | : | affirming the Order dated 7/9/2013 of |
| | : | the Court of Common Pleas, |
| | : | Philadelphia County, Civil Division at |
| NATHAN LERNER, | : | No. 2693 September Term, 2009. |
| | : | |
| Appellant | : | ARGUED: March 8, 2016 |
| | | RESUBMITTED: August 17, 2016 |

**OPINION**

**JUSTICE WECHT**[1]                                        **DECIDED: November 22, 2016**

Nathan Lerner appeals the Commonwealth Court's order denying his request for

relief. We granted allocatur to address the following issue:

> [Whether t]he Commonwealth Court [properly] decided that [it was]
> constrained by its own decision in Krug v. City of Philadelphia, 152 Pa.
> Cmwlth. 475, 620 A.2d 46 (1993)[,] to sustain a judgment for a tax
> assessment where the Common Pleas Court found that there was no
> rational basis for the amount allegedly owed by the [p]etitioner and the
> Commonwealth Court stated that the City's tactics may well lack authority
> in law.

City of Philadelphia v. Lerner, 117 A.3d 1278 (Pa. 2015). We affirm.

In September 2004, an anonymous informant sent the City of Philadelphia a

letter claiming that Lerner was concealing taxable business income from the City.

Attached to the letter were photocopies of checks made payable to Lerner. Several of

---

[1]     This matter was reassigned to this author.

these checks were issued by Lerner's alleged business partner, Lester Goldstein. Notes of Testimony ("N.T."), 6/26/2013, at 138-42. The City proceeded to investigate the anonymous tip.

In auditing Goldstein, the City discovered that Lerner had business interests in two real estate holding companies: Elco Associates ("Elco") and LeGo Associates ("LeGo"). The City also learned that Goldstein and Lerner had entered into a $94,000 "combined loan agreement" in late 2002 concerning these two entities. N.T. at 98. Pursuant to a separate contract, which was attached to the combined loan agreement, Lerner transferred to Goldstein an $85,000 partnership interest in LeGo. The audit also revealed a 2006 supplemental agreement between Lerner and Goldstein. In that agreement, Lerner disclaimed his interests in two properties: 4507 Chester Avenue and 280 West Walnut Lane.[2] N.T. at 99.

In February 2006, the City sent Lerner a letter alleging that he had failed to pay Philadelphia's net profits tax and/or business income and receipts tax. The letter instructed Lerner to submit copies of his federal tax returns from the prior five years, to complete an attached worksheet, and to remit payment to the City within thirty days. The letter stated that non-compliance would result in the City's filing of an enforcement action. The City never received a response from Lerner.[3] Approximately one month later, the City sent Lerner a "final notice," stating that it would institute collection

---

[2]  Lerner testified that he resides at 4507 Chester Avenue, but does not pay rent either to Goldstein or to LeGo. Instead, Lerner's monthly rent is "deducted from the amount that [Goldstein] pays [Lerner] in interest." N.T. at 142, 144.

[3]  Although Lerner testified that he mailed a response, the City never received it. N.T. at 45. Furthermore, the trial court found Lerner's testimony to be self-serving and incredible, id. at 244, and the response Lerner allegedly mailed to the City was not admitted into evidence. Id. at 221-22.

proceedings if Lerner failed to submit copies of his federal tax returns within ten days. Lerner ignored the notice.

In November 2006, the City sent Lerner a delinquent tax bill, which estimated that Lerner's net business income was $150,000.00 per year. N.T. at 29-32. This number apparently was not tied to any specific information in the City's possession because, without Lerner's tax records, the City had no idea how much Lerner's businesses earned. The City hoped that, confronted with an exorbitant assessment, Lerner would hand over his business records. But this failed to get Lerner's attention. He simply ignored the bill.

Eventually, the City brought a collection action. When Lerner failed to answer the City's complaint, the City obtained a default judgment. R.R. at 3b. Soon after, Lerner discovered that a default judgment had been entered against him. He moved to open that judgment, arguing that the City's service of process had been defective. The trial court opened the judgment on December 24, 2009. Six days later, Lerner sent the City a letter stating that he had never received the delinquent tax bill that the City had mailed to him three years earlier. On January 7, 2010, the City sent Lerner another copy of the bill. Lerner admitted that he received this copy.

On February 2, 2010, the City reinstated and served on Lerner its collection action complaint. R.R. at 3b. The City made numerous attempts to meet with Lerner in person to resolve his case, but Lerner refused the City's offers. N.T. at 64-67, 77-78. Approximately nine months later, on November 10, 2010, Lerner filed a petition for review with the City's Tax Review Board. The Board held a hearing, concluded that it lacked jurisdiction in light of the collection action pending in the trial court, and dismissed Lerner's petition. Lerner appealed the Board's dismissal to the trial court, which consolidated Lerner's appeal with the City's collection action. Notably, the trial

court later quashed Lerner's appeal after he refused to pay for a transcript of the administrative hearing.[4] This effectively severed the collection action from Lerner's appeal. The Commonwealth Court affirmed the trial court's order quashing Lerner's appeal. Lerner's appeal from the Board's determination that it lacked jurisdiction over Lerner's petition for review is not presently before us.

Lerner sought to delay the City's collection action with onerous discovery requests and frivolous filings. He served hundreds of interrogatories, requests for admissions, and requests for production of documents. Meanwhile, Lerner simultaneously disregarded the City's discovery requests and refused to disclose information about his income, expenses, assets, and business interests. When the trial court ordered Lerner to comply, he violated the court's order. As a result, the court precluded Lerner from entering any evidence at trial that he had not disclosed to the City.

Prior to trial, the City filed a motion *in limine* to preclude Lerner from challenging the underlying tax assessment. The City cited Krug v. City of Philadelphia, 620 A.2d 46 (Pa. Cmwlth. 1993) for the straightforward proposition that a taxpayer who has not

---

[4] The trial court directed Lerner to order and to pay for a transcript of the hearing before the Board. In a case management order, the trial court cautioned Lerner that "[f]ailure to order the transcript will result in the dismissal of the appeal absent good cause shown." See Appeal of Nathan Lerner, 515 C.D. 2013, slip op. at 2 (Pa. Cmwlth. April 7, 2014). When Lerner still had not ordered the transcript months later, the trial court ordered him to do so within twenty days. Lerner agreed to comply with the court's order. Nonetheless, another three months passed without Lerner ordering the transcript. The City eventually filed a motion to quash the appeal. Lerner responded with a ninety-four page "Answer" wherein he explained that he decided not to order the transcript (in violation of the court's order) because he unilaterally chose to deem it "moot." The trial court quashed Lerner's appeal, admonishing him for his "attempts to forestall the ultimate conclusion in the underlying tax appeal by ignoring the [c]ourt's [o]rder to pay for the transcript necessary for disposition of this matter." Appeal of Nathan Lerner, 2013 WL 2300897, *4 (C.P. Phila. May 2, 2013).

appealed his or her assessment to the Tax Review Board cannot challenge that assessment in a later collection action. See id. at 48-49 ("When the City files a civil action in a common pleas court to collect delinquent wage taxes, and the taxpayer never appealed the assessment for the wage taxes to the Board, all defenses against the tax assessment which should have been raised before the Board are waived and, thus, may not be interposed against the City's collection action."). Lerner did not file a response to the City's motion *in limine*.[5] The trial court granted the City's motion, thereby precluding Lerner from challenging the assessment of his tax liability at trial.

On June 26, 2013, the parties proceeded to a bench trial. Denise Reynolds, a revenue collection manager with the Philadelphia Department of Revenue, testified for the City. When asked how the City determines net business income if a taxpayer refuses to submit the necessary records, Reynolds candidly replied that her supervisor "really just makes [it] up." N.T. at 43-44. At the conclusion of trial, the court awarded the City $280,772.67, which included principal liability of $74,907, $85,828.05 in interest, and $120,037.62 in penalties. N.T. at 11. Although the City's tax assessment was, as the trial judge characterized it, "basically an amount pulled out of the sky," the trial court concluded that Lerner had waived his right to challenge that assessment when he failed to timely petition the Board for review. Id. at 259-60, 265 ("Since the failure to strictly pursue the administrative remedy precludes parties from subsequently

---

[5] Lerner responded to an earlier motion *in limine* that the City filed. In that motion, the City argued that Krug precluded Lerner from challenging the underlying tax assessment. See Memorandum in Support of the City's Motion *In Limine*, 8/8/2012, at 4-6. In his response to the City's motion, Lerner argued only that the City's business tax assessment "is grossly and transparently defective," and that he never received a copy of the original assessment. See Lerner's Response to the City's Motion *In Limine*, 8/24/2012, at 3-7. At no point did Lerner discuss or attempt to distinguish Krug.

asserting defense[s] to a claim, [Lerner] cannot raise defenses here because he did not raise it at the administrative level."); see Krug, *supra.*

Lerner filed a post-trial motion, wherein he argued that the "judgment in this matter is not supported by substantial evidence and is against the weight of the evidence." See Lerner's Post-Trial Motion, 7/8/2013, at ¶10. Lerner chose to focus on this issue even though the trial court itself agreed that the City's assessment lacked evidentiary support. Lerner never asserted that the trial court erred in granting the City's motion *in limine*, nor did he take issue with the trial court's reliance upon Krug.

After the court denied his post-trial motion, Lerner filed a notice of appeal and a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). In his concise statement, Lerner simply incorporated by reference the issue that he raised in his post-trial motion, to wit, whether the City's tax assessment was supported by substantial evidence. In its Rule 1925(a) opinion, the trial court again cited Krug and explained that "the validity of the assessment and whether [Lerner] is liable for the delinquent taxes are no longer [at] issue because [Lerner] waived his right to challenge them." Trial Court Op., 10/22/2013, at 10.

On appeal to the Commonwealth Court, Lerner argued for the first time that the trial court's reliance upon Krug was misplaced. Specifically, Lerner now decided to assert on appeal that a taxpayer who fails to exhaust his or her administrative remedies may nonetheless challenge a tax assessment in a subsequent collection action when the taxing authority's own evidence demonstrates that the assessment has no basis in fact. Although Lerner espouses the same argument before this Court, he has not preserved it. See Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal."). In Commonwealth v. Hill, 16 A.3d 484 (Pa. 2011), we reaffirmed the well-settled, bright-line rule:

[A]ny issues not raised in a Rule 1925(b) statement will be deemed waived; the courts lack the authority to countenance deviations from the Rule's terms; the Rule's provisions are not subject to *ad hoc* exceptions or selective enforcement; appellants and their counsel are responsible for complying with the Rule's requirements[.]

Id. at 494.

In granting the City's motion *in limine*, the trial court determined that Lerner had waived his right to challenge the underlying tax assessment by failing to exhaust his administrative remedies. At the trial court level, Lerner never argued that Krug was inapposite or that an exception to the exhaustion requirement applied. Rather, Lerner consistently asserted—before, during, and after trial—that the City's tax assessment lacked an evidentiary basis. See, e.g., Lerner's Post-Trial Motion, 7/8/2013, at ¶3 (arguing that "the assessment that [the City] prepared and forwarded to [Lerner] was a figure that they simply made up and had no basis in any evidence"). But now, on appeal before this Court, Lerner argues that his failure to exhaust his administrative remedies within the Department of Revenue did not prevent him from challenging the City's tax assessment. It could not be more obvious that these are utterly distinct contentions. The former is a substantive challenge to the City's assessment, whereas the latter concerns the trial court's jurisdiction to hear such a challenge in the first place. By failing to comply with Rule 1925(b), Lerner waived the issue that he now requests this Court to address.

The trial court correctly precluded Lerner from challenging the City's assessment due to his failure to exhaust administrative remedies. It is well-settled that a party may not seek judicial resolution of a dispute until he or she has exhausted available administrative remedies. Canonsburg Gen. Hosp. v. Dep't of Health, 422 A.2d 141, 144 (Pa. 1980); see 1 Pa.C.S. § 1504 (providing that statutory remedies "shall be strictly pursued"); S.E. Penna. Transp. Auth. v. City of Philadelphia, 101 A.3d 79, 90 (Pa. 2014) (citing Bayada Nurses, Inc. v. Commonwealth, Dep't of Labor and Indus., 8 A.3d

866, 875 (Pa. 2010)). In light of this rule, we have explained that "[a] taxpayer who does not exhaust the remedy provided before an administrative board to secure the correct assessment of a tax [] cannot thereafter be heard by a judicial tribunal to assert its invalidity." Commonwealth, to Use of Unemployment Compensation Fund v. Lentz, 44 A.2d 291, 293 (Pa. 1945) (quoting Gorham Mfg. Co. v. State Tax Comm. of New York, 266 U.S. 265, 269-70 (1924)); see Commonwealth, Dep't. of Rev., Bureau of Cty. Collections v. Hitzelberger, 214 A.2d 223, 226 (Pa. 1965) (finding taxpayers lost right to challenge imposition of tax where they failed to pursue available statutory remedy).

Essentially, Lerner urges us to craft a special exception for him. Appellant's Brief at 19. We decline to do so. To afford Lerner relief would permit litigants freely to skip the administrative process and attempt another bite at the tax apple in our trial courts.

Given sufficiently troubling factual circumstances, this "Lerner Exception" could be invoked to justify a party's non-compliance with virtually any substantive, procedural, or jurisdictional rule. In Krug, for example, a taxpayer alleged that he did not owe Philadelphia wage taxes because he neither worked nor lived in the City. Lerner's rationale would seem necessarily to suggest that Krug was wrongly decided. But the holding in Krug was correct. And it was correct for the same reason that the lower courts in this case were correct: the Philadelphia Tax Review Board has exclusive original jurisdiction over challenges to the City's tax assessments. Cherry v. City of Philadelphia, 692 A.2d 1082, 1084 (Pa. 1997) (citing Phila. Code § 19-1702(1)). A taxpayer may not choose to forego, flout, or leapfrog that process and instead simply opt later to seek judicial resolution of a waived challenge at his leisure.

Lerner asserts that reversal is necessary to prevent a "fraud" in the legal process. See Appellant's Brief at 18-19. But that process consists of rules, and Lerner has flouted them at every turn. Throughout this litigation, Lerner has violated court orders,

abused the discovery process, and overwhelmed the lower courts with frivolous pleadings, motions, and interlocutory appeals. Ad hoc and idiosyncratic exceptions to legal rules will not promote public confidence or maintain the integrity of the judicial process.

Because Lerner has waived the issue that he now requests this Court to review, the Order of the Commonwealth Court is affirmed.

Justices Baer, Dougherty and Mundy join the opinion.

Chief Justice Saylor files a dissenting opinion in which Justices Todd and Donohue join.

Justice Donohue files a dissenting opinion in which Chief Justice Saylor and Justice Todd join.