SHARP EQUIPMENT COMPANY, Petitioner,

v.

UNEMPLOYMENT COMPENSATION BOARD OF REVIEW, Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs March 22, 2002.

Decided Oct. 18, 2002.

---

Michael D. Dautrich, Reading, for petitioner.

Maribeth Wilt–Seibert, Harrisburg, for respondent.

BEFORE: FRIEDMAN, J., LEAVITT, J., and FLAHERTY, Senior Judge.

OPINION BY Judge LEAVITT.

Sharp Equipment Company (Employer) petitions for review of an order of the Unemployment Compensation Board of Review (Board) affirming a decision of the Referee that Martha J. Lykens (Claimant) was an employee, rather than an independent contractor, and entitled to unemployment benefits.[1] The Board refused to consider the second basis of Employer's appeal, *i.e.*, that Claimant voluntarily left employment. For the reasons set forth below, we vacate and remand for further proceedings on the second issue.

On June 26, 2001, Claimant made a claim for unemployment benefits with the Bureau of Employment Security (Bureau). The Bureau sent Employer an "Employer's Notice of Application, Request for Separation and Wage Information."[2] On

---

1. Benefits were awarded under Section 402(h) of the Unemployment Compensation Law (Law), Act of December 5, 1936, Second Ex.Sess., P.L. 2897 (1937), *as amended*, 43 P.S. § 802(h).

2. Section 501(b) of the Law provides that "notice shall be given in writing to the last employer of the claimant stating that an application has been filed by the designated employe." 43 P.S. § 821(b).

a line entitled "Remarks," Employer wrote that Claimant was a "1099 independent contractor." Reproduced Record 7a (R.R.——). However, Claimant asserted that she was an employee. R.R. 10a.

On July 20, 2001, the Bureau determined that Claimant was an employee of Employer and granted her unemployment benefits.[3] On July 31, 2001, Employer filed a Petition for Appeal asserting two issues: that Claimant was an independent contractor and that she had voluntarily terminated her employment with Employer. The Referee sent a Notice of Hearing to the parties indicating that the only issue before it was the independent contractor issue.

At the hearing on Employer's appeal, Claimant testified about her job with Employer. She explained that on March 2, 2001, she applied for the position in response to a classified ad for clerical help that had appeared in the newspaper. Claimant testified that she did not notice that the job application she completed stated that the position was for an independent contractor. Five days later, Claimant executed an "Independent Contractor Agreement" with Employer, which set forth the terms and conditions of her service, and she began working. The agreement provided, *inter alia*, that Employer would not be withholding taxes from Claimant's pay.

Employer assigned Claimant to a work schedule of Monday through Friday, from 9:00 a.m. to 5:00 p.m.,[4] with a one-hour lunch break. Claimant's duties included general clerical and office work such as filing and typing business correspondence. Employer provided Claimant with initial training and instruction, all tools, equipment and material necessary to perform the work. Employer compensated Claimant at a rate of $7.50 per hour; she had to keep track of her hours and submit an independent contractor invoice once a week to Employer in order to be paid. During the course of her employment, Claimant took time off for personal reasons for which she obtained advance approval from Employer.

In early May, Claimant gave Korey Blanck (Blanck), Employer's president, notice that she would be quitting in thirty days because she had found other employment. Later, on two occasions, Claimant indicated to Blanck that she could stay until the end of July; Claimant's last day of employment, however, was June 1, 2001. Claimant eventually obtained a full-time position at Hollywood Cleaners on July 20, 2001.

Blanck also testified at the hearing. Blanck stated that Claimant and all employees were free to pick their own hours during the company's regular hours of 8:00 a.m. to 5:00 p.m., Monday through Friday. Blanck confirmed Claimant's testimony that after she gave notice of her intention to leave employment, she then informed Blanck that she was available to work an additional month. However, Blanck testified that Claimant's job had finished by June 1, 2001.[5]

---

3. Section 501(c)(1) of the Law provides that "[t]he department shall promptly examine each claim for ... compensation and on the basis of the facts found by it shall determine whether or not the claim is valid. 43 P.S. § 821(c)(1).

4. The record is somewhat inconsistent on Employer's work day. The contract provided for a 9:00 a.m. to 5:00 p.m. workday. R.R. 64a. The testimony shows that Claimant worked 8:00 a.m. to 5:00 p.m. R.R. 51a.

5. Blanck testified that after Claimant gave notice that she was leaving the company, he stopped the direct mailing program that she was working on because he planned to have another printing done of another type of mailing. R.R. 53a.

Lori Keifer (Keifer), who identified herself as an independent contractor, also testified at the hearing. Keifer stated that she could work any hours in which Employer's business was open and that she could take time off work whenever she wanted. Further, Keifer stated that she overheard Claimant give Blanck notice that she planned to leave as of June 1, 2001.

On August 28, 2001, the Referee issued a decision concluding that notwithstanding the "Independent Contractor Agreement" she executed, Claimant was an employee and, as such, entitled to unemployment compensation benefits pursuant to Section 402(h) of the Law. The Referee refused to consider the second basis of Employer's appeal, *i.e.*, whether Claimant voluntarily terminated her employment. Employer appealed the Referee's decision to the Board, and on October 17, 2001, it issued the following order:

> The Board of Review, in giving consideration to the entire record of the prior proceedings, including the testimony submitted at the Referee's hearing(s), concludes that the determination made by the Referee is proper under the Unemployment Compensation Law and in accordance with the precedent rulings established in the interpretation thereof.

R.R. 81a. Thereafter, Employer filed a petition for review with this Court.[6]

■ On appeal, Employer contends that the Board erred in affirming the Referee. First, it contends that Claimant was not an employee but rather, an independent contractor. Second, Employer contends that the Board should have reversed the Referee's refusal to consider whether Claimant had voluntarily left employment.

■ "Employment" is defined in Section 4 of the Law, which provides in relevant part as follows:

> Services performed by an individual for wages *shall be deemed to be employment subject to this act, unless and until it is shown* to the satisfaction of the department that—(a) such individual has been and will continue to be *free from control* or direction over the performance of such services both under his contract of service and in fact; and (b) as to such services such individual is customarily engaged in an *independently established trade*, occupation, profession or business.

43 P.S. § 753 (emphasis added). To overcome this statutory presumption of employment, the employer must show that the individual performed the work free from the employer's control and direction and that the work was done for others, not just the employer. Unless both of these showings are made, it will be presumed that one who performs services for wages is an employee. *Venango Newspapers v. Unemployment Compensation Board of Review*, 158 Pa.Cmwlth. 379, 631 A.2d 1384 (1993).

■ The first test is whether a claimant worked free of employer's control. If the putative employer has the right to direct the job and the manner of performance, an employer-employee relationship likely exists. *York Newspaper Co.*, 160 Pa. Cmwlth. 475, 635 A.2d 251; *Erie Indepen-*

---

**6.** Our scope of review in an unemployment compensation appeal is limited to determining whether an error of law was committed, constitutional rights were violated, or whether necessary findings of fact were supported by substantial evidence. *York Newspaper Co. v. Unemployment Compensation Board of Re-* view, 160 Pa.Cmwlth. 475, 635 A.2d 251 (1993). Whether Claimant is an independent contractor is a determination of law subject to our review. *Krum v. Unemployment Compensation Board of Review*, 689 A.2d 330 (Pa. Cmwlth.1997).

*dence House, Inc. v. Unemployment Compensation Board of Review*, 126 Pa. Cmwlth. 358, 559 A.2d 994 (1989). The determination requires consideration of factors such as: whether there is a fixed rate of remuneration; whether taxes are deducted from the claimant's pay; whether the employer supplies the tools necessary to carry out the services; and whether the employer offers on-the-job training. *Venango*, 631 A.2d at 1387–1388. No single factor controls the outcome.

Under *York Newspaper* and *Venango*, Claimant was an employee. Employer controlled Claimant's work and the manner in which it was performed. Claimant had a fixed work schedule; she was paid a fixed wage;[7] Employer supplied her tools, equipment, initial training and instruction; and Employer approved any days that Claimant took off.[8]

■ The second test is whether the claimant was engaged in an independently established trade. In this inquiry, courts look to see whether the claimant had a proprietary interest in the business or could operate free from the control of any individual. *Erie*, 559 A.2d at 995. To determine whether the claimant could operate free of any control, courts consider (1) whether the individual could provide the services in question to any person wanting them or (2) whether the nature of the services were such that they could only be performed for a single employer. *Venango*, 631 A.2d at 1388.

■ Here, Claimant did not have a proprietary interest in Employer's enterprise, and there is no evidence that she held herself out as an independent contractor. Although Claimant signed an Independent Contractor Agreement, this single action does not itself establish independent contractor status. Claimant was not in the business of doing clerical work for persons other than Employer. Indeed, because Claimant was fully engaged from 9:00 a.m. to 5:00 p.m. for a full week with Employer, she did not have the opportunity to serve others.

■ Employer had the burden to overcome the strong presumption[9] that Claimant was an employee, not an independent contractor. Employer did not show that Claimant worked free of Employer's control or that she was customarily engaged in an independent trade. We hold, therefore, that the Board correctly affirmed the Referee's determination that Claimant was an employee.

■ Employer also argues that the Board should have addressed whether Claimant voluntarily terminated her employment under Section 402(b) of the Law, 43 P.S. § 802(b).[10] In response, the Board argues that it could not rule on an issue not decided by the Referee and that Employer had waived the issue of whether Claimant voluntarily separated from employment.

---

7. The only factor not supporting the finding that Claimant was an employee is that taxes were not withheld from her wages.

8. The testimony of Claimant, Blanck and Keifer were not consistent on the issue of Employer's control. The fact finder referee has the authority to make credibility determinations.

9. Section 4 of the Law, 43 P.S. § 753, defines "employment" as "services performed for wages."

10. Section 402 of the Law provides in pertinent part,

> An employe shall be ineligible for compensation for any week—
> * * *
> (b) In which his unemployment is due to voluntarily leaving work without cause of a necessitous and compelling nature.....

43 P.S. § 802(b).

The Board relies on a regulation of the Department of Labor and Industry (Department) which provides as follows:

> When an issue is taken from a decision of the Department, the Department shall be deemed to have ruled upon all matters and questions pertaining to the claim. *In hearing the appeal the tribunal shall consider the issues expressly ruled upon in the decision from which the appeal was filed.* However, any issue in the case may, with the approval of the parties, be heard, if the speedy administration of justice, without prejudice to any party, will be substantially served thereby.

34 Pa.Code § 101.87 (emphasis added). This regulation requires the Referee to consider issues expressly decided by the Bureau's action. *Gould v. Unemployment Compensation Board of Review,* 77 Pa. Cmwlth. 554, 466 A.2d 750 (1983); *Simmons v. Unemployment Compensation Board of Review,* 129 Pa.Cmwlth. 315, 565 A.2d 829 (1989), *aff'd,* 528 Pa. 590, 599 A.2d 646 (1991). Here, the Bureau expressly decided that Claimant was an employee; the Referee was, accordingly, compelled to review that issue.

However, the regulation also allows the Referee to consider "any issue," not just those expressly ruled upon by the Bureau. The regulation has been interpreted to allow the Referee to consider other issues so long as the claimant is not surprised or prejudiced. *Hine v. Unemployment Compensation Board of Review,* 103 Pa. Cmwlth. 267, 520 A.2d 102 (1987). Here, Claimant could not claim surprise because the issue of her voluntary separation was expressly raised by Employer in its Notice of Appeal. The regulation then, did not bar the Referee from considering the second issue raised by Employer in its Notice of Appeal.

■ Of perhaps even greater relevance is the Department regulation pertaining to appeals before the Board. It states in relevant part as follows:

> In connection with the consideration of an appeal to the Board from the decision of a referee, *the Board may consider an issue in the case though not expressly ruled upon in the decision of the Department or the referee and though not previously raised in the claim or appeal proceedings.* However, issues not previously considered or raised will not be considered by the Board, either upon application for, or in the determination of an appeal unless the speedy administration of justice, without prejudice to any party, will be substantially served thereby *and are supported by the record.*

34 Pa.Code § 101.107(a) (emphasis added). Here, the record before the Referee includes evidence relevant to the question of whether Claimant voluntarily left employment. The issue could have been decided by the Board; it has discretion even to decide an issue not been previously raised, if the speedy administration of justice will be served. Employer expressly raised the issue in its original Notice of Appeal, and facts were adduced on that question by the Referee. The Board should have decided the question.

■ We disagree with the Board that Employer waived the issue of Claimant's voluntary separation. Waiver occurs if a party fails to raise the issue prior to appearing before the Commonwealth Court. *Wing v. Unemployment Compensation Board of Review,* 496 Pa. 113, 436 A.2d 179 (1981).[11] Stated otherwise, the

---

11. In *Wing,* the Supreme Court examined the Employer's Notice of Application form where

the Employer stated that claimant voluntarily quit. The Bureau denied benefits because

litigant must preserve the issue at the administrative agency hearing in order to obtain judicial review. *Gould,* 466 A.2d at 751. Here, Employer raised the issue of voluntary termination in its Notice of Appeal filed with the Referee and also in its Notice of Appeal to the Board.[12] It raised the issue at the appropriate point, *i.e.,* the commencement of the administrative hearing.

■ The Department's regulations are designed to prevent surprise to claimants. Accordingly, where an applicant has been found *ineligible* for benefits, this Court will limit the hearing to the reason stated in the Bureau's determination. See *e.g., Hanover Concrete Co. v. Unemployment Compensation Board of Review,* 43 Pa. Cmwlth. 463, 402 A.2d 720 (1979). Here, the Claimant was found eligible for benefits; implicit in that determination is that Claimant's separation was not voluntary. In any case, Claimant cannot claim surprise. Employer's Notice of Appeal stated two grounds for reversing the Bureau's decision, and the Referee took evidence on both grounds. If we were to uphold the Board, it would mean that the Bureau's "Employer's Notice of Application" becomes the last opportunity for an employer to object to an award of benefits. This is unfair surprise to the employer. The form does not advise the employer to list every reason for which the claimant is ineligible; it does not advise that the administrative hearing, which is intended to correct errors of the Bureau, will only consider issues listed under "Remarks." This would be an inappropriate use of the Bureau's form notice that is generated in the investigation phase of the matter not the adjudication phase. Neither the Law nor the Department's regulation support such an outcome. It certainly is at odds with the firm principle that the purpose of the administrative hearing is to correct the errors of the agency in advance of judicial review. *Canonsburg General Hospital v. Department of Health,* 492 Pa. 68, 422 A.2d 141 (1980).

■ The Referee was mistaken in his belief that he could not consider the issue of voluntary termination at an evidentiary hearing conducted under 34 Pa.Code § 101.87. Further, the Board had the authority to direct the Referee to rule upon an issue that was not waived, and it should have remanded for consideration of the issue. *Gould,* 466 A.2d at 752.[13] Accord-

---

claimant voluntarily quit and the referee and Board affirmed. Employer appealed to this Court and alleged for the first time that claimant had engaged in willful misconduct. On review, the Supreme Court held that Employer waived the defense of willful misconduct because it failed to raise it prior to appearing before the Commonwealth Court. *Wing,* 496 Pa. at 117, 436 A.2d at 180.

12. The Board also relies on *Harwood v. Unemployment Compensation Board of Review,* 109 Pa.Cmwlth. 559, 531 A.2d 823 (1987), where the court held that Employer cannot change his reasons for challenging a claim once the case has been appealed to the Commonwealth Court. Here, Employer raised its defenses its initial Notice of Appeal before the referee and the Board; the Employer did not

change its reasons for challenging the claim on appeal before this Court.

13. Employer did not raise the issue of voluntary termination on the Employer's Notice of Application. However, the form is informal and is for informational purposes only. *Simmons,* 565 A.2d at 831. The purpose of this notice is to inform the employer that claimant has applied for unemployment benefits, and to require the employer to provide wage and length of service information needed to calculate benefits.

Further, the employer does not have to raise an issue until it is aggrieved. *Classic Personnel v. Unemployment Compensation Board of Review,* 151 Pa.Cmwlth. 423, 617 A.2d 66 (1992). Here, Employer was not aggrieved until the Bureau rendered its deci-

ingly, we remand this case to the Board to address whether Claimant voluntarily terminated her employment with Employer.

Accordingly, we vacate and remand the decision of the Board.

## ORDER

AND NOW, this 18th day of October, 2002, we vacate the October 17, 2001 order of the Unemployment Compensation Board of Review and remand the matter for further proceedings consistent with the attached opinion.

Jurisdiction relinquished.

## CONCURRING AND DISSENTING OPINION BY Judge FRIEDMAN.

I respectfully concur and dissent. I agree with the majority that the Unemployment Compensation Board of Review (Board) correctly determined that Martha J. Lykens (Claimant) was an employee of Sharp Equipment Company (Employer), not an independent contractor. However, I disagree that, after the Board made that determination, the Board erred in failing to consider whether Claimant had a necessitous and compelling reason for voluntarily leaving her employment with Employer.

The regulation at 34 Pa.Code § 101.87 (emphasis added) provides as follows:

> When an appeal is taken from a decision of the Department, the Department shall be deemed to have ruled upon all matters and questions pertaining to the claim. In hearing the appeal the tribunal shall consider the issues expressly ruled upon in the decision from which the appeal was filed. However, any issue in the case may, *with the approval of the parties,* be heard, if the speedy administration of justice, *without prejudice to any party,* will be substantially served thereby.

Here, the local job center, i.e., the Department, determined that Claimant was an employee rather than an independent contractor. On appeal, the referee deemed that this was the sole issue relating to the claim and ruled only on that issue. There is no indication in the record that Claimant gave her approval for the referee to consider whether Claimant had a necessitous and compelling reason for voluntarily terminating employment with Employer. Therefore, under 34 Pa.Code § 101.87, the referee could not decide that issue.

The majority states that 34 Pa.Code § 101.87 "has been interpreted to allow the Referee to consider other issues so long as the claimant is not surprised or prejudiced." (Majority op. at 1025.) The majority cites *Hine v. Unemployment Compensation Board of Review,* 103 Pa. Cmwlth. 267, 520 A.2d 102 (1987), in support of this statement. I agree that *Hine* allows a referee to consider other issues so long as the claimant is not surprised or prejudiced. However, this court pointed out in *Hine* that a claimant is prejudiced whenever the burden of proof on the initial issue belongs to the employer and the burden of proof on the other issue belongs to the claimant.[1] *Id.*

---

sion to grant Claimant benefits; Employer raised the issue of whether Claimant voluntarily terminated her employment at its earliest opportunity by filing a Petition to Appeal. In both of its petitions, Employer requested the referee and the Board to address the issue of voluntarily termination.

**1.** Indeed, our supreme court has stated:

> It is difficult to imagine what could be more prejudicial to claimants than if, after nearly two years of litigation and appeals, they find themselves before the lower tribunal and again forced to litigate issues long since waived, and uncertain if yet other, novel theories will be thrust upon them in another two years.

Here, initially, Employer had the burden of proving that Claimant was an independent contractor instead of an employee. *Krum v. Unemployment Compensation Board of Review*, 689 A.2d 330 (Pa. Cmwlth.1997). If the referee had considered the voluntary quit issue, Claimant would have had the burden of proving that she had a necessitous and compelling reason for voluntarily leaving her employment. *Mauro v. Unemployment Compensation Board of Review*, 751 A.2d 276 (Pa. Cmwlth.2000). Therefore, contrary to the majority's analysis, the regulation at 34 Pa.Code § 101.87 did *not* allow the referee to consider whether Claimant voluntarily left her employment.

The majority also relies upon the regulation at 34 Pa.Code § 101.107(a) (emphasis added), which provides as follows:

> In connection with the consideration of an appeal to the Board from the decision of a referee, the Board may consider an issue in the case though not expressly ruled upon in the decision of the Department or the referee and though not previously raised in the claim or appeal proceedings. However, issues not previously considered or raised will not be considered by the Board, either upon application for, or in the determination of an appeal unless the speedy administration of justice, *without prejudice to any party*, will be substantially served thereby and are supported by the record.

(Majority op. at 1025.) Because Claimant would have been prejudiced by the need to assume the burden of proof on the voluntary quit issue, this regulation did *not* permit the Board to consider whether Claimant voluntarily left her employment

with cause of a necessitous and compelling nature.

Finally, the majority states that Employer did not waive the voluntary quit issue, explaining that an employer need not raise an issue until the employer is aggrieved, and, here, Employer was not aggrieved until the Department granted Claimant benefits. (Majority op. at 1026–27 n. 13.) The majority cites *Classic Personnel v. Unemployment Compensation Board of Review*, 151 Pa.Cmwlth. 423, 617 A.2d 66 (1992), in support of this view. However, the facts in *Classic Personnel* are quite different from the facts here. In *Classic Personnel*, this court stated,

> Nowhere in the official record is there evidence that there was any communication between the Bureau and the [e]mployer, or that the [e]mployer had a chance to and did raise defenses against the claim. The record does not include the Notice of Application and a request for separation and wage information that the Bureau normally sends to [e]mployers.... Neither does the Summary of Interview contain any notation of contact with the [e]mployer....

*Classic Personnel*, 617 A.2d at 67 (footnote omitted). This court concluded that, "[b]ecause the [e]mployer apparently was not given a chance to raise defenses before the Bureau, the [e]mployer could not have waived the issue [presented to the Board]...." *Id.* at 69. This court stated that, under the circumstances, the employer preserved the issue by raising it "at the first available opportunity once it had become aggrieved." *Id.* at 70.

Here, Employer *did* receive the Notice of Application and the request for separation and wage information, and Employer *did* raise a defense, alleging that Claimant

*Wing v. Unemployment Compensation Board of Review*, 496 Pa. 113, 118, 436 A.2d 179, 181 (1981). Here, more than one year has

passed since the job center's July 2001 determination and the referee's August 2001 decision.

was an independent contractor. Employer failed to anticipate that it would not prevail on that issue, choosing *not* to argue in the alternative that Claimant was an employee who voluntarily quit her job. Because Employer clearly had an opportunity to raise this alternative defense, and did not do so, Employer waived the issue.

Accordingly, I would affirm.