# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Anthony J. Guzik,                          :
                                           :
                    Petitioner             :
                                           :
          v.                               :     No. 2087 C.D. 2013
                                           :
Unemployment Compensation                  :     Submitted:  April 25, 2014
Board of Review,                           :
                                           :
                    Respondent             :


BEFORE:     HONORABLE RENÉE COHN JUBELIRER, Judge
            HONORABLE MARY HANNAH LEAVITT, Judge
            HONORABLE ROCHELLE S. FRIEDMAN, Senior Judge


OPINION NOT REPORTED

**MEMORANDUM OPINION**
**BY JUDGE COHN JUBELIRER**[1]                    **FILED:  August 25, 2014**


Anthony J. Guzik (Claimant), pro se, petitions for review of an Order of the Unemployment Compensation (UC) Board of Review (Board) affirming the UC Referee's (Referee) Decision finding Claimant ineligible for UC benefits pursuant to Section 402(e) of the UC Law.[2]  On appeal, Claimant argues that: (1) the Board

---

[1] This matter was reassigned to the authoring judge on July 1, 2014.

[2] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, as amended, 43 P.S. § 802(e).  Section 402(e) provides that "[a]n employe shall be ineligible for compensation for any week - [i]n which his unemployment is due to his discharge or temporary suspension from work

erred by finding that his conduct constituted willful misconduct for reasons different than the reasons given by his employer, Goodwill of Southwestern PA (Employer) as to why it discharged Claimant; (2) the Board's findings are not supported by substantial evidence; and (3) he received disparate treatment from Employer because he was treated differently than other employees who committed similar rule infractions. Because we conclude that the Board erred by finding that Claimant was ineligible for UC benefits, we reverse.

## I. PROCEDURAL HISTORY

Claimant was employed as a team leader for Employer through May 25, 2013. (Referee Decision, Findings of Fact (FOF) ¶ 1.) Claimant applied for UC benefits on May 30, 2013, stating that he was initially suspended on May 23, 2013 "but was not given a reason." (Claimant Questionnaire, R. Item 2.) Claimant stated further that he then received a termination letter informing him that he was being discharged for a rule violation, which Employer indicated "was a pattern of inappropriate comments." (Claimant Questionnaire.) Claimant listed the rule that he was accused of violating as "Rules of Conduct." (Claimant Questionnaire.) Claimant denied making any inappropriate comments and further stated that other people who did make inappropriate comments were not discharged. (Claimant Questionnaire.) Employer did not respond to Claimant's claim for UC benefits. (Employer Questionnaire (Incomplete), R. Item 3.)

for willful misconduct connected with his work, irrespective of whether or not such work is 'employment' as defined in this act." Id.

2

The UC Service Center issued a Notice of Determination on June 14, 2013 finding that Claimant was not ineligible for UC benefits pursuant to Section 402(e) of the UC Law. (Notice of Determination, R. Item 5.) The UC Service Center determined that Claimant denied violating a work rule and that Employer did not provide information to show that Claimant violated a rule. Accordingly, the UC Service Center determined that Employer did not sustain its burden of proof.[3]

Employer appealed the Notice of Determination. Employer attached several documents to its petition in support of its appeal including copies of its policies entitled "Standards of Conduct" and "Goodwill of Southwestern Policy on Harassment," as well as a "Handbook Receipt and Acknowledgment" signed by Claimant. (Employer's Petition for Appeal from Determination w/ Attachments (Petition for Appeal), R. Item 6.)

Employer also attached a letter, dated June 21, 2013, explaining why Claimant was discharged from employment. Therein, Employer stated that "[t]he reason for termination is violation of Goodwill Standards of Conduct #1: *'Physical or verbal abuse or harassment of a fellow employee, consumer, or client. This includes the use of threatening, intimidating, abusive or vulgar language or*

---

[3] "If the employer alleges willful misconduct because the claimant violated a work rule, the employer must prove both the existence of the rule and its violation." Caterpillar, Inc. v. Unemployment Compensation Board of Review, 703 A.2d 452, 456 (Pa. 1997). A claimant must also be "made aware of the existence of the work rule." Bruce v. Unemployment Compensation Board of Review, 2 A.3d 667, 671 (Pa. Cmwlth. 2010). If the employer proves that the employee's conduct constitutes willful misconduct, the burden shifts to the employee to show that he or she had good cause for the conduct considered willful misconduct. McKeesport Hospital v. Unemployment Compensation Board of Review, 625 A.2d 112, 114 (Pa. Cmwlth. 1993).

*gestures'*." (Petition for Appeal, Employer's Letter (June 21, 2013) (emphasis in original).) Employer provided the following explanation of Claimant's conduct that it considered a violation of the foregoing rule:

> The improper conduct includes asking the women in the store to come over and hang out in his hot tub, and informing 17 year-old young lady that he likes to "screw" on the first date. On another occasion [Claimant] requested that fellow employee . . . "bring" the girls to his house to check out his new Jacuzzi.

(Petition for Appeal, Employer's Letter (June 21, 2013).) Employer included written statements, dated May 13 and 14, 2013, authored by two of Claimant's co-workers detailing the inappropriate comments allegedly made by Claimant. (Petition for Appeal, Co-Workers' Statements (May 13, 2013, May 14, 2013).)

Finally, Employer attached to its Petition for Appeal a copy of a May 28, 2013 termination letter addressed to Claimant stating that, "[t]hrough investigation, it was determined that there [was a] pattern [of] inappropriate comments made by [Claimant] to numerous employees." (Petition for Appeal, Termination Letter (May 28, 2013).) This letter further advised Claimant that "[t]his violates Goodwill Standards of Conduct #1 'Physical or verbal abuse or harassment of a fellow employee, consumer, or client. This includes the use of threatening, intimidating, abusive or vulgar language or gestures.'" (Petition for Appeal, Termination Letter (May 28, 2013).)

## II. REFEREE'S HEARING

A hearing on Employer's appeal was held before the Referee. Claimant appeared pro se and testified on his own behalf. He also presented the testimony

4

of his aunt as a fact witness. Employer presented the testimony of its District Manager and Director of Retail Personnel (Director).[4] Claimant objected, on the basis of hearsay, to the introduction of the two co-workers' statements into the record. (Hr'g Tr. at 3, R. Item 9.) The Referee sustained Claimant's objection and the statements were not admitted. (Hr'g Tr. at 3.)

District Manager testified as follows. District Manager and Director met with Claimant on May 23, 2013 to discuss issues regarding Claimant's behavior. (Hr'g Tr. at 5.) They discussed with Claimant his recitation in the workplace of the graphic details of a sex crime that had occurred in which Claimant's son was the victim. (Hr'g Tr. at 6.) District Manager had asked Claimant prior to May 23, 2013 not to share the details of the crime with other people or employees at the store. (Hr'g Tr. at 6-7.) Other employees informed District Manager that Claimant had discussed the details of the crime with them. (Hr'g Tr. at 6-7.) According to District Manager, Claimant acknowledged during the meeting that he had shared details of the crime with other employees, including the 17 year-old minor, after District Manager asked him not to discuss the incident. (Hr'g Tr. at 7.) Other behavioral issues were also discussed with Claimant on May 23, 2013, including conversations he had with other employees regarding a bar Claimant owned and the inappropriate weekend activities that went on at the bar. (Hr'g Tr. at 11.) Claimant acknowledged to District Manager that he had discussed what he did at the bar on weekends with another employee. (Hr'g Tr. at 12.) District Manager stated that Claimant's discussion of the details of the crime against his

---

[4] Employer's Human Resources Director was also sworn in as a witness; however, she did not testify.

5

son and the activities at his bar were the two most important conversations that Claimant engaged in "with inappropriate people" and in "inappropriate places at the store" that resulted in his termination.[5] (Hr'g Tr. at 12.)

Director testified as follows. Director was part of the meeting with Claimant on May 23, 2013 and he was made aware of the complaints against Claimant that were discussed at the meeting. (Hr'g Tr. at 12.) The most serious and concerning issue with Claimant's behavior was the discussion with numerous people, particularly the 17 year-old minor female, about what happened to his son, after District Manager informed Claimant not to discuss the crime. (Hr'g Tr. at 13.) Claimant acknowledged during the May 23, 2013 meeting that he had discussed the crime against his son with others, including the minor. (Hr'g Tr. at 13.) There had been other complaints from Claimant's co-workers about his discussion of strippers at his bar and his making inappropriate comments or suggestions of a sexual nature to other people in the store. (Hr'g Tr. at 13.) These complaints were the reason an investigation was opened by Employer. (Hr'g Tr. at 13.) Claimant was terminated for violating Employer's Standards of Conduct by using vulgar language. (Hr'g Tr. at 14.)

Claimant testified that Employer's rules were not consistently applied, resulting in him being treated unfairly. (Hr'g Tr. at 16-17.) To support this

---

[5] Claimant objected to District Manager's testimony on the basis of hearsay. (Hr'g Tr. at 8.) The Referee overruled Claimant's objection because District Manager was testifying as to the conversation she had with Claimant and his violation of her directive not to share the details of the crime. (Hr'g Tr. at 10.)

6

assertion, Claimant described other instances of employee misconduct where Employer did not terminate the offending employees. (Hr'g Tr. at 16-18.)

Claimant testified further that he was not given ample opportunity to defend himself against Employer's allegations because he was not informed with specificity of the alleged statements that were made against him. (Hr'g Tr. at 18.) Claimant testified that he informed Director that, a few months earlier, he had told District Manager that he discussed the details of the crime against his son at work; that he apologized to District Manager; and that she responded that she understood, but nothing further should be said about the incident. (Hr'g Tr. at 19.)

Claimant believed he was asked to attend the May 23, 2013 meeting to discuss his allegations that there was a conspiracy to get him fired. (Hr'g Tr. at 19.) Claimant testified that "[b]ecause of the circumstances surrounding my FMLA and the fact that I had been speaking about these circumstances at work made these false statements the perfect opportunity to terminate [him]." (Hr'g Tr. at 19.) Claimant testified further that there were contradictions on why he was fired after the May 23, 2013 meeting. (Hr'g Tr. at 19, 22.) Claimant testified that he was informed on May 23, 2013 that he was temporarily suspended for his own protection because of the seriousness of the charges, which he presumed were the charges he made regarding the conspiracy to have him fired; however, he later received a termination letter stating that he was fired for making inappropriate comments to numerous employees. (Hr'g Tr. at 19, 22.)

During closing arguments, Employer requested that Claimant be denied UC benefits because he violated District Manager's directive not to discuss the graphic details of the crime against his son with other employees. (Hr'g Tr. at 33.) Employer argued that Claimant admitted to participating in this behavior and that it was this behavior that violated Employer's policies. (Hr'g Tr. at 33.) Claimant denied that he made any inappropriate comments to his co-workers that would be considered harassment. (Hr'g Tr. at 33.)

## III. REFEREE'S DECISION

Based on the evidence presented, the Referee made the following findings of fact:

2. The employer maintains standards of conduct which prohibit insubordination or refusal to comply with instructions or failure to perform reasonable duties as assigned.

3. On or around the claimant's last day of work, he came to work agitated and upset because he discovered that a family member had been the victim of a violent crime.

4. When the claimant came [into] the employer's facility, he began speaking to his supervisor about the incident.

5. Because the claimant was speaking loudly about the graphic details of a sex crime committed against his family member, the supervisor asked the claimant to come [into] her office.

6. The claimant's supervisor allowed him time to speak in order to vent his frustrations and become calmer.

7. When the claimant was finished, his supervisor expressed her sympathy and asked him not to discuss the details of the crime with his coworkers, considering the graphic nature of the criminal activity.

8

8. After the claimant left his supervisor's office, he began sharing the details of the crime with his coworkers.

9. Included in the coworkers with whom he shared the details of the crime, was a seventeen year old female.

10. Eventually, the claimant's supervisor became aware that he was telling his coworkers about the details of the criminal act.

11. The claimant's supervisor and the director of retail personnel met with the claimant to ask him about what had transpired.

12. During the meeting with the district manager and the director o[f] retail personnel, the claimant admitted that he spoke about the criminal act, including the graphic details.

13. The claimant gave no response when the district manager asked him why he violated her directive that he not share the details of the crime with his coworkers.

14. Previously, the claimant had complained to the district manager that he believed his coworkers were conspiring to have him discharged.

15. The district manager discovered that some of the claimant's coworkers had complaints against him, but she could discover no evidence of a conspiracy to give false information about the claimant.

16. The claimant was suspended pending an investigation of his violation of the district manager's directive.

17. The claimant was discharged for violating the district manager's directive that he not speak about the criminal incident to his coworkers.

(FOF ¶¶ 2-17.) The Referee concluded, based on the foregoing findings, that Claimant admittedly violated District Manager's directive not to discuss with co-workers the graphic details of the crime committed against his son and that he did not have good cause for his actions. (Referee Decision at 2-3.) The Referee

9

concluded further that, while there was testimony about Claimant's other interactions with his co-workers, because she found "that those were not the basis for his discharge, she ma[de] no findings concerning those and d[id] not consider them necessary for a finding of willful misconduct." (Referee Decision at 3.) Accordingly, the Referee reversed the UC Service Center's determination and found Claimant ineligible for UC benefits pursuant to Section 402(e) of the UC Law. (Referee Decision at 3.)

## IV.    BOARD'S ORDER

Claimant appealed the Referee's Decision to the Board and also requested a remand hearing. In his appeal, Claimant averred, *inter alia*, that: (1) he was never given a directive or direct order from District Manager not to discuss what happened to his son with co-workers; (2) his termination letter did not state that he violated such a directive; (3) Employer's appeal from the Notice of Determination did not state that he violated such a directive; (4) there was no corroboration that he violated such a directive; (5) the record does not support findings of fact 3, 4, 5, 7, 8, 9, 12, and 16; and (6) the Referee's Decision should be reversed or a new hearing scheduled "to determine the facts surrounding this case." (Claimant's Petition for Appeal from Referee's Decision w/ Attachments (Also Requesting Remand Hearing), R. Item 11.)

In affirming the Referee's Decision, the Board adopted the Referee's findings of fact and conclusions of law. (Board Order, R. Item 15.) In addition, the Board set forth the following reasoning for its Order:

> The Board notes that the claimant admitted, both in his testimony and to the employer during the May 23, 2013 meeting, that he discussed

10

the details of the assault on his son with his co-workers, despite the employer's direct instruction to refrain from doing so. Additionally, the claimant credibly testified that he was suspended pending an investigation of his discussion of his son's assault. The Board also does not credit the claimant's testimony that he received disparate treatment from the employer following the violation of the employer's directive. The claimant failed to present testimony or evidence adequate to support such a finding. On appeal, the claimant alleges that he was uncertain of the reason that he was discharged by the employer. However, the claimant provided voluminous testimony regarding the final incident: his choice to discuss the details of the assault on his son with his co-workers. Therefore, the Board finds that the parties had the opportunity for a full and fair hearing, including the opportunity to present witnesses, cross examine, and present evidence of their choice in support of their case. The claimant has not advanced proper cause for the granting of a remand hearing. The claimant's request that the record be remanded for additional testimony is denied.

(Board Order.) Claimant now petitions this Court for review of the Board's Order.[6]

## V. CLAIMANT'S APPEAL

In support of his appeal, Claimant initially argues, as he did before the Board, that he was not notified that he was terminated for violating District Manager's oral directive not to discuss the crime against his son and that Employer's Petition for Appeal from the Notice of Determination did not state that he was terminated for this reason. Thus, Claimant contends, the Board's Order should be reversed.

---

[6] "Our review is limited to determining whether the necessary findings of fact were supported by substantial evidence, whether errors of law were committed, or whether constitutional rights were violated." Johns v. Unemployment Compensation Board of Review, 87 A.3d 1006, 1009 n.2 (Pa. Cmwlth. 2014).

11

In response the Board argues that, under 34 Pa. Code § 101.87,[7] the Referee is permitted to consider other issues so long as the claimant is not prejudiced or surprised. The Board asserts that the critical factual basis on which eligibility turned remained the same in this case and there was no shifting of the burden of proof because there was no surprise or prejudice. The Board argues that Claimant's termination letter and Employer's Petition for Appeal stated that he was discharged for making inappropriate comments to co-workers and Employer's testimony shows that Claimant admitted making such comments. The Board contends that because the factual basis for termination was the same and the burden of proof remained the same, it did not err in considering whether Claimant's violation of Employer's oral directive constituted willful misconduct.

Section 101.87 of the regulations provides that the Referee "shall consider the issues expressly ruled upon in the decision from which the appeal was filed." 34 Pa. Code § 101.87. The Referee has the authority to hear additional issues with the consent of the parties if the parties are neither surprised nor prejudiced. Id.; Henderson v. Unemployment Compensation Board of Review, 77 A.3d 699, 722

---

[7] This regulation provides:

When an appeal is taken from a decision of the Department, the Department shall be deemed to have ruled upon all matters and questions pertaining to the claim. In hearing the appeal the tribunal shall consider the issues expressly ruled upon in the decision from which the appeal was filed. However, any issue in the case may, with the approval of the parties, be heard, if the speedy administration of justice, without prejudice to any party, will be substantially served thereby.

34 Pa. Code § 101.87.

12

(Pa. Cmwlth. 2013); Sharp Equipment Company v. Unemployment Compensation Board of Review, 808 A.2d 1019, 1025 (Pa. Cmwlth. 2002). The purpose of this regulation is to prevent a claimant from having to defend or explain his conduct without fair warning and an opportunity to prepare. Anthony v. Unemployment Compensation Board of Review, 506 A.2d 501, 503 (Pa. Cmwlth. 1986); Goodman v. Unemployment Compensation Board of Review, 447 A.2d 1127, 1128 (Pa. Cmwlth. 1982).

Our Court has held that "if the Bureau in notifying a claimant of his ineligibility for reasons of willful misconduct describes the offending misconduct, fairness and [34 Pa. Code § 101.87] require that the evidence adduced at the referee's hearing be limited to the kind of conduct described in the notice." Bilsing v. Unemployment Compensation Board of Review, 382 A.2d 1279, 1281 (Pa. Cmwlth. 1978). As such, a referee on appeal may only consider those charges or facts delineated in the Notice of Determination. Sterling v. Unemployment Compensation Board of Review, 474 A.2d 389, 390 (Pa. Cmwlth. 1984).

In Sterling, the notice of determination stated that the claimant was discharged for reasons that constituted willful misconduct because he gave unauthorized prescription discounts, which was against company policy. Id. at 389-90. At the referee's hearing, the employer raised additional rule violations. Id. The employer charged that the claimant gave discounts without properly completed records, he consumed candy and sodas without reimbursing the employer, and he took money out of the cash register and replaced "the same amount with 'cents off' coupons." Id. at 390. The referee found the claimant

ineligible for UC benefits based on the foregoing rule violations and, in affirming, the Board adopted the referee's findings of fact. Id. The claimant appealed to this Court arguing that his due process rights were violated because he did not have prior notice of the facts that were raised for the first time at the referee's hearing. Id.

On appeal, we held that the notice of determination was insufficient to provide proper notice of the additional charges against the claimant upon which the Board relied in denying his claim for UC benefits. Id. After pointing out that notice is an integral and important requirement of due process, we stated that:

> Along with the constitutional requirement of notice the special rules of practice and procedure that govern proceedings under the [UC] Law limit the referee to a consideration of those issues expressly ruled upon by the Office of Employment Security. Therefore, "the Board may only consider the nature of the alleged willful misconduct as delineated in the Bureau's determination notice." Hanover Concrete Co. v. Unemployment Compensation Board of Review, . . . 402 A.2d 720, 721 ([Pa. Cmwlth.] 1979).

Id. at 390-91. Further relying on Hanover, we held that "'[t]o allow a critique of other conduct against which charge the employee is unprepared to defend or explain is fundamentally unfair and absent mutual consent of its consideration, is prohibited.'" Sterling, 474 A.2d at 391 (quoting Hanover, 402 A.2d at 721.) Thus, we held in Sterling "that there was clearly prejudice to the claimant" because he "had no notice that the referee or Board would rely on additional charges not within the Notice of Determination." Id. at 391. Accordingly, in Sterling, the denial of UC benefits based on giving discounts without properly completed records, consuming candy and sodas without reimbursing the employer, and taking

14

money out of the cash register after only being charged with giving unauthorized prescription discounts was prejudicial to the claimant because the employer made no attempt to provide notice to the claimant or to amend the charges to include the additional reasons for his discharge before the referee's hearing. Id. at 390-91.

There are similar differences here between the reasons that Employer gave for terminating Claimant in both the termination letter and its Petition for Appeal appealing the UC Service Center's Notice of Determination and the reasons the Referee and Board relied upon in denying Claimant UC benefits. The Notice of Determination stated that Claimant was discharged for violating a rule, that Claimant denied violating the rule, and that Employer did not provide information that Claimant violated the rule. What specific rule Claimant allegedly violated is not mentioned in the Notice of Determination, but Claimant stated in his application for benefits that he was accused of violating Employer's Rules of Conduct.

After the UC Service Center issued its determination finding Claimant eligible, Employer sent a letter to the UC Service Center explaining that it terminated Claimant for violating Employer's Standards of Conduct #1 set forth as *"Physical or verbal abuse or harassment of a fellow employee, consumer, or client. This includes the use of threatening, intimidating, abusive or vulgar language or gestures."* (Petition for Appeal, Employer's Letter (June 21, 2013) (emphasis in original).) Employer's letter further explains the improper conduct and attaches two statements from Claimant's co-workers. However, the co-workers' statements do not make any mention of Claimant telling others in graphic

15

detail about the violent crime committed against Claimant's son and the termination letter does not state that Claimant was terminated for violating District Manager's oral directive not to discuss his son's situation with co-workers or customers.

At the Referee's hearing, Employer alleged, for the first time, that Claimant had violated a different rule as justification for Claimant's discharge; specifically, the oral directive not to discuss the crime against his son with co-workers. As such, Employer's witnesses' testimony focused on Claimant's violation of District Manager's oral directive rather than Claimant's alleged violation of Employer's written Standards of Conduct. Based on this evidence, the Board found that Claimant's violation of the oral directive was the basis for Claimant's discharge and did not make any findings with respect to Claimant's alleged violation of Employer's written Standards of Conduct. However, there is nothing in the record showing that Claimant consented to the Referee or the Board considering any rule violation except the one stated in the termination letter and Employer's appeal documents. Therefore, without prior notice of Employer's contention that Claimant violated District Manager's oral directive, Claimant here, like the claimant in Sterling, was unprepared to explain or defend against the charge that he violated this directive.[8]

This situation is not the same as Simmons v. Unemployment Compensation Board of Review, 565 A.2d 829 (Pa. Cmwlth. 1989). In Simmons the claimant

---

[8] The Board concedes in its brief that, despite its determination to the contrary, Claimant did not admit during the hearing that he was being suspended for violating District Manager's oral directive. (Board's Br. at 15 n.3.)

16

argued that, because the employer refused to provide information to the Office of Employment Security, he did not have notice of the employer's defense before the referee's hearing. Id. at 831. We held that the claimant received sufficient notice of the issues to be addressed at the hearing because he was apprised in the hearing notice of the employer's willful misconduct defense. Id. at 832. However, in Simmons, the issue was whether the claimant's single act of mixing two incompatible oils into one tank, which caused damage to the employer's property, constituted willful misconduct. Id. at 830. Thus, there was only one incident in Simmons of which the claimant was aware that could form the basis for the willful misconduct defense. Here, Employer actually charged Claimant with violating its written Standards of Conduct by making inappropriate comments to co-workers, but at the Referee's hearing, Employer presented evidence of an alleged violation of a different rule (the oral directive) and different conduct as justification for Claimant's discharge. Therefore, unlike the claimant in Simmons, Employer in this matter was relying on more than one incident and Claimant did not have sufficient prior notice of the additional charge that was addressed at the Referee's hearing and determined to be the basis of his ineligibility for UC benefits.

## VI. CONCLUSION

Accordingly, because Claimant did not have prior notice or give consent as required by 34 Pa. Code § 101.87, we conclude that there was prejudice to Claimant by the Board relying upon the additional charge that Claimant violated District Manager's oral directive in order to find him ineligible for UC benefits pursuant to Section 402(e). In addition, while the Board did not make any findings as to whether Employer met its burden of proof on Claimant's violation of its

17

written Standards of Conduct because the Board determined that this alleged violation was not the basis for Claimant's discharge, a remand for consideration of this issue is not necessary. First, because Employer did not offer any testimony from the co-workers who allegedly complained about Claimant making inappropriate statements, the Referee sustained Claimant's hearsay objection to the admission of the co-workers' written statements into the record. Second, the Board agrees in its brief that the portion of District Manager's testimony regarding the co-workers' statements is hearsay. (Board's Br. at 12.) Thus, Employer did not meet its burden with competent substantial evidence that Claimant was terminated for violating its written Standards of Conduct.

For the foregoing reasons, the Board's Order is reversed.[9]

_____
**RENÉE COHN JUBELIRER, Judge**

---

[9] Based on our resolution, we need not address the other issues raised by Claimant in this appeal.

18

**IN THE COMMONWEALTH COURT OF PENNSYLVANIA**

Anthony J. Guzik,      :
           :
      Petitioner :
           :
    v.      :  No. 2087 C.D. 2013
           :
Unemployment Compensation  :
Board of Review,     :
           :
      Respondent :

## **O R D E R**

**NOW**, August 25, 2014, the Order of the Unemployment Compensation Board of Review entered in the above-captioned matter is **REVERSED**.

         _____
         **RENÉE COHN JUBELIRER, Judge**