J-A08016-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| BRIAN SHELDON | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JOANNE SHELDON | : | |
| | : | |
| Appellant | : | No. 1689 EDA 2020 |

Appeal from the Order Entered August 12, 2020
In the Court of Common Pleas of Montgomery County Civil Division at
No(s):  No. 2016-14233

BEFORE:   PANELLA, P.J., MURRAY, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY MURRAY, J.:                    **FILED MAY 26, 2021**

Joanne Sheldon (Wife) appeals from the order granting the petition for special relief filed by Brian Sheldon (Husband) during post-decree proceedings.  Wife specifically challenges the trial court's grant to Husband of "full control" of the sale of the former marital residence, "at a price to sell" and "capped at $445,000.00"; the court also ordered that if there were "no offers or movement," the list price "shall drop by $5,000.00" every two weeks.  Upon review, we affirm.

Husband and Wife married on May 22, 1999.  After separating, and in contemplation of divorce, they entered into a Property Settlement Agreement (PSA) dated February 29, 2016.  On July 14, 2016, Husband filed

_____

[*] Former Justice specially assigned to the Superior Court.

for divorce. On May 26, 2017, the trial court entered a divorce decree which incorporated the parties' PSA.

Pertinently, the PSA provided Wife with the marital residence, in exchange for waiving her interest in Husband's retirement accounts, as well as any claims for spousal support, alimony, counsel fees and expenses. PSA at 4-7. Because Husband was a payor on the mortgage of the marital residence, the PSA provided that Wife "refinance the current mortgage on the property by September, 2019. If for any reason, [Wife] defaults on the mortgage for 45 days, the residence shall immediately be listed for sale." *Id.* at 9.

On June 28, 2019, Husband filed a petition for special relief to enforce the PSA based on Wife's failure to make mortgage payments between May and July of 2019. The court held a hearing on September 10, 2019. In finding Wife in contempt, the court explained:

> . . . [Wife] admitted, on direct examination by her own lawyer, that she failed to make timely payments for two months. N.T., [9/10/19, at] 17-18. The lender's documents, which [the trial court] found more credible than her testimony, proved she failed to make payments for three months. *Id.* at 29. Nothing in her testimony suggested that she was willing or able to perform her obligation to refinance by the month's end. To the contrary, she testified that she would only have the property listed for sale by the end of the month, and her focus was not minimizing the harm she was causing to [Husband], but maximizing the gain on the sale by acting as the listing agent. *Id.* at 19-20.
>
> [The trial court] found [Wife] in breach of the PSA, *id.*, and . . . also found that [Wife's] default caused great harm to [Husband's] credit worthiness, *id.* at 32-33. Because the PSA was made an order of the court in the divorce decree, [the

court] also found [Wife] in contempt for having intentionally breached her obligation to list the property for sale within 45 days after she defaulted. *Id.* at 30-31.

Trial Court Opinion, 9/24/20, at 4.

On the day of the hearing, September 1, 2019, the parties executed a consent order requiring Wife to list the property for sale no later than September 30, 2019. Order, 9/10/19, at ¶1. The order granted Wife full control of the listing until February 22, 2020, at which time Husband would "have the option of designating a [realtor] for the listing of the property for a period of 145 days." *Id.* at ¶2. Wife agreed to make monthly mortgage payments, cooperate with all realtors, make the residence available for showing, and keep it in good order and repair. *Id.* at ¶¶3, 5-6.

Wife listed the property for $874,995.00. On March 5, 2020, Husband filed a petition for contempt. Husband averred that Wife continued to make late payments on the mortgage and was overpricing the property, "making a mockery of the Court's Order and ensuring that the home would not sell and further perpetuating the damage to [Husband's] credit." Petition for Contempt, 3/5/20, at ¶13. The trial court held another hearing on August 12, 2020. Husband testified that on February 22, 2020, he retained a real estate agent to list the property, but Wife would not cooperate. N.T., 8/12/20, at 15. Husband also testified that his agent performed a market analysis on the property and determined the fair market value in September 2019 to be between $385,000 - $425,000. *Id.* at 14.

Husband presented the testimony of real estate agent Raymond Jones, who testified that the fair market value of the property in August of 2020 was $524,000 to $554,000; however, Mr. Jones noted Wife denied him access to the home, and flooding issues on the property would impact the sale. N.T., 8/12/20, at 46-48. Husband had submitted into evidence "Exhibit 1," an appraisal conducted on August 1, 2020 which valued the property at $545,000. *Id.* at 18. Like Mr. Jones, Husband noted that the property sustained recent water damage and would require mold remediation and repair. *Id.* at 22-23.

Consistent with the above testimony, the trial court found Wife "failed to perform her obligations as ordered by the court in 2019." Trial Court Opinion, 9/24/20, at 6. Accordingly, the trial court ordered, in relevant part:

1. [Husband] is to have full control of the property listing for 301 Smith Road, Schwenksville, PA as well as utilize a realtor of [Husband's] choice. The property is to be listed at a price to sell.

2. [Wife] is to cooperate with all negotiations pertaining to the listing and sale of the property at 301 Smith Road, Schwenksville, PA, as well as sign any/all necessary paperwork pertaining to said property. The failure of [Wife] to comply with this Order may result in Sanctions of a fine of $100.00 a day for every day in Contempt of this Court's Order.

3. The sale price of the property at 301 Smith Road, Schwenksville, PA is to be capped at $445,000 (Four Hundred and Forty Five Thousand Dollars). If there is no offers or movement on said property after 2 weeks, the price of said property shall drop by $5,000 (Five Thousand Dollars) every 2 weeks thereafter.

- 4 -

4. Within 10 days of the date of this order, [Wife] is to make the property at 301 Smith Road, Schwenksville, PA available to [Husband's] real estate agent. [Wife] is to cooperate with the process of showing the property. If [Wife] does not comply with this Order, Law Enforcement may be utilized to gain entry into said property.

Order, 8/12/20, at ¶¶1-4.

Wife filed this appeal. Both Wife and the trial court have complied with Pennsylvania Rule of Appellate Procedure 1925. On appeal, Wife presents the following two issues:

A. Whether through its Order of August 12, 2020, the trial court erred as a matter of law and abused its discretion in altering the terms of the parties' Property Settlement Agreement entered on February 29, 2016.

B. Whether the trial court erred as a matter of law and abused its discretion in overruling an Order of Court by a Judge in the same Court in the same matter.

Wife's Brief at 3.

We review a trial court's decision to grant or deny special relief in divorce actions for an abuse of discretion.

Judicial discretion requires action in conformity with law on facts and circumstances before the trial court after hearing and consideration. Consequently, the court abuses its discretion if, in resolving the issue for decision, it misapplies the law or exercises its discretion in a manner lacking reason. Similarly, the trial court abuses its discretion if it does not follow legal procedure.

An abuse of discretion exists when the trial court has rendered a decision or a judgment which is manifestly unreasonable, arbitrary, or capricious, has failed to apply the law, or was motivated by partiality, prejudice, bias or ill will.

However, our deference [to the trial court] is not uncritical. An order may represent an abuse of discretion if it misapplies the law. It is therefore our responsibility to be sure that in entering its order the court correctly applied the law. An order may also represent an abuse of discretion if it reaches a manifestly unreasonable result. This will be the case if the order is not supported by competent evidence. It is therefore also our responsibility to examine the evidence received by the court to be sure that the court's findings are supported by the evidence. Although we will accept and indeed regard ourselves as bound by the court's appraisal of a witness' credibility, we are not obliged to accept a finding that is not supported by the evidence.

When reviewing questions of law, our scope of review is plenary.

*Conway v. Conway*, 209 A.3d 367, 371 (Pa. Super. 2019) (citation omitted and formatting altered). Further, with regard to Wife's challenge of the trial court's interpretation of the parties' PSA, we note that post-nuptial agreements are to be reviewed under the same principles as pre-nuptial.

*Lugg v. Lugg*, 64 A.3d 1109, 1112 (Pa. Super. 2013). We recognize:

The determination of marital property rights through prenuptial, post-nuptial and settlement agreements has long been permitted, and even encouraged. Where a prenuptial agreement between the parties purports to settle, fully discharge, and satisfy any and all interests, rights, or claims each party might have to the property or estate of the other, a court's order upholding the agreement in divorce proceedings is subject to an abuse of discretion or error of law standard of review. An abuse of discretion is not lightly found, as it requires clear and convincing evidence that the trial court misapplied the law or failed to follow proper legal procedures. We will not usurp the trial court's fact-finding function.

* * *

As to interpretation, enforcement, and remedies, in Pennsylvania, [property settlement] agreements are interpreted in accordance with traditional principles of contract law. Generally, the parties are bound by their agreements, absent

- 6 -

fraud, misrepresentation or duress. They are bound without regard to whether the terms were read and fully understood and irrespective of whether the agreements embodied reasonable or good bargains.

When interpreting an [] agreement, the court must determine the intention of the parties. When the words of a contract are clear and unambiguous, the intent of the parties is to be discovered from the express language of the agreement. Where ambiguity exists, however, the courts are free to construe the terms against the drafter and to consider extrinsic evidence in so doing.

*Sabad v. Fessenden*, 825 A.2d 682, 686, 688 (Pa. Super. 2003) (quotations and citations omitted).

Because contract interpretation is a question of law, this Court is not bound by the trial court's interpretation. *Stamerro v. Stamerro*, 889 A.2d 1251, 1257–58 (Pa. Super. 2005) (citations and quotations omitted). Our standard of review is *de novo* and to the extent necessary, the scope of our review is plenary as the appellate court may review the entire record in making its decision. *Id.* However, we are bound by the trial court's credibility determinations. *Kraisinger v. Kraisinger*, 928 A.2d 333, 339 (Pa. Super. 2007) (when interpreting marital settlement agreement, trial court is sole determiner of facts; absent abuse of discretion, we will not usurp trial court's fact-finding function).

When construing agreements involving clear and unambiguous terms, this Court need only examine the writing itself to give effect to the parties' understanding. *Creeks v. Creeks*, 619 A.2d 754, 756 (Pa. Super. 1993). The court must construe the contract only as written and may not modify

the plain meaning of the words under the guise of interpretation. *Id.* When the terms of a written contract are clear, this Court will not re-write it or give it a construction in conflict with the accepted and plain meaning of the language used. *Id.*

Here, the PSA specified "the parties may utilize any remedy or section set forth in the Pennsylvania Divorce Code of 1980, as amended, to enforce any term of this Agreement as though it had been an Order of Court." PSA at 8. Regarding modification, the PSA states, "No modification or waiver of any of the terms hereof shall be valid unless in writing and signed by both parties and no waiver of any breach hereof or default hereunder shall be deemed a waiver of any subsequent default of the same or similar nature." *Id.* at 7.

Wife asserts that the trial court erroneously modified the plain meaning of the PSA, and that the PSA fails to contemplate a list price for the property – reasonable or otherwise – or that the property be sold "as is." Wife's Brief at 11-12. Wife claims that despite "her best efforts," she was unable to refinance the property in the time set forth in the PSA, and therefore listed the property for sale in September 2019. *Id.* at 10-11. Wife contends the trial court's order capping the list price and requiring the price decrease $5,000 every two weeks until sold was an impermissible modification of the PSA and an error of law. *Id.*

Conversely, Husband argues the Divorce Code "grants the trial courts broad power to enforce orders of equitable distribution, and provides

remedies available against one who fails to comply with a court's order of equitable distribution." Husband's Brief at 13 (citing **Prol v. Prol**, 935 A.2d 547, 553 (Pa. Super. 2007)). Husband cites Section 3502 of the Divorce Code, which states:

> **(e) Powers of the court.--**If, at any time, a party has failed to comply with an order of equitable distribution, as provided for in this chapter or with the terms of an agreement as entered into between the parties, after hearing, the court may, in addition to any other remedy available under this part, in order to effect compliance with its order:
>
> (1) enter judgment;
>
>       *     *     *
>
> **(4) order and direct the transfer or sale of any property required in order to comply with the court's order;**
>
>       *     *     *

23 Pa.C.S.A. § 3502(e) (emphasis added).

Husband contends the trial court "did not alter the terms of the parties' PSA when it fashioned the August 12, 2020 Order. Rather, the trial court, after a full hearing, found [Wife] in contempt of the duties imposed by the September 10, 2019 Order and found [Husband] continued to be harmed by [Wife's] continued willful disregard for the Court's September 10, 2019 Order. . . ." Husband's Brief at 14. We agree.

First, the PSA permits modification so long as modification is "in writing and signed by both parties." The September 10, 2019 consent order

- 9 -

modifying the terms of the PSA was signed by both parties and permissible under the express terms of the PSA.

Likewise, the trial court did not err in finding Wife willfully violated the September 10, 2019 consent order. The court explained:

Notwithstanding that the [September 10, 2019] order created a mechanism by which [Wife] would eventually forfeit control over the selling price, it also gave her an extra five months to sell the property at the highest price the market would bear and extended the deadline for satisfying the note indefinitely, to whatever date the property might be sold.

Two weeks after the deadline of February 22, 2020, [Husband] filed a Petition for Contempt of the September 10, 2019 Order. The petition averred that when [Wife] listed the property for sale, she set the initial price at $874,900.00, far above the value suggested by a market analysis by [Husband's] real estate agent. The petition also averred that when [Wife] failed to sell the property by February 22, 2020 and [Husband] notified [Wife] that he would exercise his option to list the property for sale, she breached her obligation to cooperate with [Husband's] real estate agent.

On August 12, 2020, [Husband] appeared in court and produced testimony and documentary evidence supporting his allegations. . . .

* * *

From the foregoing evidence the [trial court] found [Wife] failed to perform her obligations as ordered by the court in 2019. To achieve a remedy for [Husband] in view of [Wife's] continuing breach of her obligations to sell the property and pay the note, the [trial court] decided that the house would be listed for sale by [Husband's] real estate agent, as is, priced to sell. The [trial court] filed a written order giving [Husband] full control over listing the property for sale, except that the price was not to exceed $445,000.00 and for every two weeks the property remained unsold, the price was to be dropped $5,000.00. Like [the September 10, 2019 consent order], the [court] ordered

[Wife] to fully cooperate with the listing agent. In view of her longstanding intransigence, the [court] specifically ordered her to allow [Husband's] agent to enter the property, and stated that [Husband] and his agent could apply to law enforcement for assistance if [Wife] refused entry.

Trial Court Opinion, 9/24/20, at 5-7.

The record supports the court's reasoning, and we thus discern no error or abuse of discretion. The Divorce Code grants the court full "equity power and jurisdiction" to advance justice. Section 3323(f) provides:

> **Equity power and jurisdiction of the court.—**In all matrimonial causes, the court shall have full equity power and jurisdiction and ***may issue injunctions or other orders which are necessary to protect the interests of the parties or to effectuate the purposes of this part and may grant such other relief or remedy as equity and justice require against either party*** or against any third person over whom the court has jurisdiction and who is involved in or concerned with the disposition of the cause.

23 Pa.C.S.A. § 3323(f) (emphasis added).

Under Section 3323(f), the trial court may order a party to act or refrain from acting if and as appropriate. "[T]he parameters of the enforcement authority the General Assembly intended to give the trial courts," are ascertained "by considering the occasion and necessity for the enactment and the object the Legislature sought to attain in the statute." ***Annechino v. Joire***, 946 A.2d 121, 123 (Pa. Super. 2008). As this Court noted in ***Annechino***, the purpose of the 1988 amendments to the Divorce Code was to extend remedies, sanctions and vehicles of enforcement to agreements covering certain matters ancillary to divorce. ***Id.*** at 124. In sum, the trial court in this case had equitable power and jurisdiction to enter

- 11 -

the August 12, 2020 order specifying conditions to effectuate the sale of the marital residence consistent with the terms of the parties' PSA. 23 Pa.C.S.A. § 3323(f).

Husband testified that despite agreeing to pay the mortgage as provided in the PSA, Wife did not pay the mortgage, and as a result, his credit score dropped nearly 300 points. N.T., 8/12/20, at 9. Also, Wife's delay of the sale of the property and violation of both the PSA and September 10, 2019 consent order caused Husband to incur additional attorney's fees for the pursuit and presentation of the contempt petitions. *Id.* at 9, 20-22. Wife provided no explanation for her failure to comply with the PSA and September 10, 2019 consent order; despite the court ordering Wife to appear at the August 12, 2020 hearing, Wife opted to travel to North Carolina for a "vacation with her family." *See* Wife's Brief at 11 n.1; *see also* N.T., 8/12/20, at 3-4.

As discussed above, the court found Husband credible, and entered the August 12, 2020 order to advance the purpose of the parties' PSA and September 10, 2019 consent order, *i.e.*, resolve equitable distribution of the marital estate. *See* 23 Pa.C.S.A. § 3502(e)(4) ("If, at any time, a party has failed to comply with an order of equitable distribution" the trial court may "order and direct the transfer or sale of any property required in order to comply with the court's order."). We agree with the trial court that under

these circumstances, where Wife was clearly in contempt, the order was appropriate.[1]

In her second issue, Wife baldly asserts the trial court's August 12, 2020 order "effectively nullified [the September 10, 2019 consent order] and rewrote the Order with no regard to the contractual agreements set forth in the PSA." Wife's Brief at 16. Wife cites *Hainsey v. Com. Pa. Liquor Control Bd.*, 602 A.2d 1300 (Pa. 1992), for the general proposition that it is "improper for one judge to overrule another judge based upon the same record facts in that such action [constitutes] an abuse of discretion." Wife's Brief at 14 (citing *Hainsey*, 602 A.2d at 1305). Wife suggests that because the September 10, 2019 order was silent as to a list price for the marital residence, the August 12, 2020 order effectively nullified the September 10, 2019 order and was an abuse of discretion by the trial court.

The trial court opined:

On appeal [Wife] argues that the undersigned "overruled" [the September 10, 2019] order by regulating the sale price of the property, but that term did nothing to impede [the September 10, 2019] order insofar as it gave [Husband] an option to sell

---

[1] For example, Husband and his realtor both testified that the property sustained flood damage, and "at this point, it could be an unsalable home." N.T., 8/12/20, at 46-47. Husband also stated there was "now mold damage in the house that needs to be remediated. There's a flooding issue that occurred several times that needs to be remediated." *Id.* at 22. Husband urged the trial court to order the property "listed as is and hav[e] someone be willing to take on the mold remediation and renovations that are required to fix the sump pump issue and with the flooding." *Id.* at 22-23.

the property and required [Wife] to cooperate with his real estate agent if he exercised that option. The restrictions on the sale price advanced [the September 10, 2019 order] goal of enforcing the parties' agreement, in which [Wife's] satisfaction of the note was an indispensable part of the equitable distribution of the assets and liabilities of the marital estate.

Trial Court Opinion, 9/24/20, at 10.

We agree with the trial court that the August 12, 2020 order does not "overrule" the prior order. The September 10, 2019 order was a permissible modification of the PSA. After Husband filed for contempt of the order, the court conducted a hearing, and based on the evidence, found Wife in contempt. Accordingly, the court entered the August 12, 2020 order consistent with the policy and provisions of the Divorce Code. **See** 23 Pa.C.S.A. § 3323(f), **supra**; **see also** § 3502 (authorizing court to order transfer or sale of property as equitable remedy for an order of equitable distribution).

Wife fails to cite any case law or authority – and we have uncovered none – to support her assertion that the August 12, 2020 order overrules or conflicts with the September 10, 2019 order. **See** Pa.R.A.P. 2119(a)-(b) (requiring an appellant to discuss and cite pertinent authorities); **Commonwealth v. Antidormi**, 84 A.3d 736, 754 (Pa. Super. 2014) (finding issue waived because appellant "cited no legal authorities nor developed any meaningful analysis"). In fact, most of Wife's argument on this issue is mere recitation of the argument in her first issue. **See** Wife's Brief at 18 ("Given the foregoing facts of record, it cannot be said that the trial court's order was well reasoned.").

Order affirmed.

*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*

*Date: 5/26/2021*